STIANSON et al., Respondents, v. STIANSON, Appellant.

(167 N. W. 237.)

(File No. 4024.   Opinion filed April 12, 1918.)

1. **Pleadings—Answer, Trial on Merits, Waiver of Demurrer, By—Rule, Limitation of, re Facts and Jurisdiction.**

   The filing of answer, and trial on merits, after demurrer to complaint, waives the ·demurrer and the right of appeal from an adverse decision thereon; but such waiver does not extend to alleged error presenting a like question as to·sufficiency of facts, or want of jurisdiction, on a proper record, on appeal from judgment.

2. **Appeals—Error—Theory of Reversal, re Defects in Unamended Pleadings, Trial on Merits—Sufficiency of Facts, Jurisdiction, When Reviewable—Rule.**

   Our system of appellate procedure does not permit of theory or reversal of judgments after trial on merits, for defects in pleadings which might have been remedied by amendment to or on trial. ·But sufficiency or insufficiency of facts proved on trial, or want of jurisdiction of person or subject-matter, apparent from trial record, may always be reviewed upon proper exceptions and assignments of error.   Questions of sufficiency, etc., of facts proved, are controlled ·by rules governing review of findings of fact; while questions raised ·by demurrer, as to sufficiency of facts pleaded, become immaterial, regardless of pleadings, to review assignments of error challenging sufficiency of evidence to sustain findings and judgment.

3. **Trusts—Fraud by Co·heir, Co-tenant's Purchase at Mortgage Sale While Administrator—Rents and Profits Accounted for, Effect, re Evidence—Trust Relation, Fraud, When Arising, re Rule—Implied, Not Express Trust.**

   Evidence showing that defendant, a co-tenant with other heirs, and who, while administrator of the estate, purchased in his own name at foreclosure sale, realty of the insolvent estate, for amount due on mortgage, sheriff's deed on foreclosure issuing to and being recorded by him soon after his discharge, rents and profits from this land having been accounted for during administration, that he was in open and notorious adverse possession of the land since date of said deed, received rents and profits, and paid taxes, never attempting to conceal his acts or to mislead plaintiffs, co-heirs, in his dealings with them or the property, fails to show acts or conduct by him from which actual fraudulent intent might be inferred; ·that such purchase as co-tenant was not in itself fraudulent; that the trust relation as to co-tenants would not arise until after he had acquired title through such sale, and fraud in that relation would have its inception only when he

intended and attempted wrongfully to appropriate the interests of co-tenants; his relation thereto as co-tenant, and his relation as administrator, being distinct; nor are consequences flowing from his acquisition of title of co-tenants, · and those flowing from his said purchase, controlled by the same presumptions and rules.    Held, further, that the trust arising in either case is not an express, but a constructive or implied, trust.

4.  Trusts—Administrator, Whether Trustee . of Express Trust—
    Wrongful Acquisition of Title, Resulting Trusteeship—Statutes.

    An administrator, as such, does not become trustee of an express trust as to title to realty of the estate; since title thereto descends to and becomes vested in heirs upon decedent's death, subject only to payment of creditors, and does not become vested in administrator; as is true also of personalty (Civ. Code, Sec. 1093); the administrator being vested, not with title, but with certain powers and duties as a trustee; and where, through wrongful act in violation of such duties, he acquires title to either class of property, he holds as trustee of a resulting trust, not as trustee of an express trust; construing Civ. Code, Sec. 1616, making him who gains a thing by violation of trust, etc., an involuntary trustee thereof, etc., and Sec. 1609, defining an involuntary trust as one created by operation of law.

5.  Trusts—Limitation of Action, re Express Trust, Laches—Repudiation of Trust, re Bar of Statute—Results, Intent, Immateriality.

    As to an express trust, the running of statute of limitations, and laches, begins at time when such trust is openly repudiated, or acts are done by trustee which are hostile to, or in fraud of, rights of beneficiaries, and of which they have. actual knowledge, or of facts from which knowledge must be imputed to them.    As concerns results flowing from such trust, it is immaterial whether such acts are fraudulent in fact, or be deemed fraudulent in law; the intent being immaterial.

6.  Trusts—Administrator and Co-heir and Co-tenant, Acquiring
    Title Under Foreclosure, Adverse Holding, Payment of Taxes—
    Estoppel of Heirs, Lasches, Bar of Statute Limitations.

    Where an heir of a decedent owner of mortgaged land was made administrator, allowed the mortgage to be foreclosed and purchased at such sale, his title under foreclosure deed being of record for 17 years prior to suit by heirs, held, plaintiffs were estopped by laches to· claim an interest in the land, the action being barred by statute of limitations; defendant having been in adverse possession, paid taxes, and appropriated rents and profits; that the rule that neither laches nor the

statute of limitations may be invoked by trustee, etc., applies only to an express trust; having no application to constructive or involuntary trust, such as devolved on defendant.

7. **Tenancy in Common—Co-tenant's Right to Purchase Under Foreclosure—Purchase by Co-tenant Administrator.**

Defendant, who was co-tenant with other heirs of an estate, and who was made administrator, had the right, as co-tenant, to purchase realty of the estate under foreclosure sale, for his own protection.

8. **Evidence—Public Records, as Knowledge of Facts.**

Public records are equivalent to actual knowledge of facts there appearing. So held, as to effect of a recorded foreclosure deed and tax receipts concerning land purchased by a co-tenant under foreclosure sale while he was administrator; as against co-tenants.

9. **Tenancy in Common—Acquisition of Title by Co-tenant, Administrator, Against Co-tenants—Diligence by Co-tenants, Necessity of.**

While equity will not permit a co-tenant to acquire an adverse claim to common property through administration proceedings or otherwise, for his own benefit to exclusion of co-tenants, yet the latter must exercise reasonable diligence to participate in benefits of such transaction, and will not be permitted to make such election a means of speculation by delaying until benefit, such as increase of value of land, may result.

Gates, J., and Whiting, P. J., concurring specially.

Appeal from Circuit Court, Day County. Hon. THOMAS L. BOUCK, Judge.

Action by Katherine Stianson and others, against Stian Stianson, to establish in defendant a trust in realty. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

*Anderson & Waddell,* and *H. H. Potter,* for Appellant.

*Lewis W. Bicknell,* and *Campbell & Walton,* for Respondents.

(3) To point three of the opinion, Appellant cited: Stevenson v. Boyd, (Cal.), 19 L. R. A., N. S., 525; 11 A. & E. Enc. Law, 2d Ed., 1148.

(4) To point four of the opinion, Respondents cited: De-Couche v. Savetier, 8 Am. Dec. 478; Ruby v. Barnett, 49 Am. Dec. 112.

(6) To point six of the opinion, Appellant cited: Code Civ. Proc. Sec. 60, subd. 6; Bills v. Mining Co., (Cal.) 39 Pac. 43; Broder et al v. Conklin, (Cal.) 53 Pac. 699.

Respondents cited: Bostwick v. Estate of Dickson (Wis.), 26 N. W. 549; 2 Perry on Trusts, Sec. 863; Cock v. Van Etten, 12 Minn. 522; 38 Cyc. 43; McPheeters v. Wright (Ind.) 9 L. R. A. 176.

(8) To point eight of the opinion, Appellant cited: Freeman on Co-Tenancy and Partition, Sec. 156; Croven v. Craven, (Neb.), 94 N. W., 604.

(9) To point nine of the opinion, Respondents cited: 39 Cyc. 298; Rogers v. Rogers, 1 Hopkins Ch. 513-515; 3 Wend. 503 )affirmed); 20 Am. Dec. 716; 1 Perry on Trusts (Fifth Ed.), Sec. 205; Civ. Code. Secs. 1617-23.

SMITH, J. [1] Action by plaintiffs, claiming as cotenants with defendant, to establish a trust in defendant as to real property, to quiet title in plaintiffs, and for an accounting for rents and profits. Defendant filed a demurrer to the complaint for want of facts, which was overruled, and this ruling is assigned as error. Thereafter defendant answered, and the cause was tried by the court upon the merits, resulting adversely to defendant. It is settled in this jurisdiction that the filing of an answer and a trial on the merits after a demurrer waives the demurrer and the right of appeal from an adverse decision thereon. Pierson v. Minnehaha Co., 26 S. D. 462, 128 N. W. 616, Ann. Cas. 1913B, 386. This waiver, however, does not extend to an alleged error presenting a like question as to the sufficiency of facts, or want of jurisdiction upon a proper record on appeal from the judgment. Pierson v. Minnehaha Co., 28 S. D. 534, 134 N. W. 212, 38 L. R. A. (N. S.) 261.

[2] It is not the theory of our system of appellate procedure to permit the reversal of judgments after a trial upon the merits, for defects in pleadings which might have been remedied by amendment prior to or at the trial. But the sufficiency or insufficiency of the facts proved at the trial, or want of jurisdiction of the person or subject-matter, apparent from the trial record, may always be reviewed upon proper exceptions and assignments of error. Questions as to the sufficiency or insufficiency of the facts proved are controlled by the rules governing the review of findings of fact by the trial court. Any questions raised by the demurrer as to the sufficiency of the facts pleaded have become immaterial, and are not subject to review upon this appeal. But

it is proper, regardless of the insufficiency of the pleadings, to review assignments or error which challenge the sufficiency of the evidence to sustain the findings and judgment. The assignments of error in this case present no question as to the competency or relevancy of evidence. The following facts are undisputed: One John K. Stianson died intestate in Day county, on November 29, 1895. The decedent at the time of his death, was owner of the real property in dispute. The plaintiffs and defendant are heirs at law of the decedent, each entitled to an undivided one-fifth interest in said real property. On January 10, 1896, the defendant, on his own petition, was appointed administrator and qualified and acted until January 19, 1898, when administration proceedings were closed and he was discharged by order of the county court. When John K. Stianson died, there was a mortgage on the real property in the sum of $350, which became due shortly after defendant was appointed administrator, remained unpaid, and was foreclosed on March 27, 1897. Defendant purchased the land at the foreclosure sale in his own name for $433, the amount due on the mortgage, and on March 27, 1898, received the sheriff's deed therefor in his own name. The deed was duly recorded the day it was issued. Prior to receiving said deed, defendant was in possession of the premises as administrator. When he took possession of the property as administrator, in January, 1896, the plaintiffs Katherine Stianson and Sam K. Stianson were of adult age, and plaintiffs Laura and Carrie Stianson, twin sisters, were about 10 years of age.

It will be noted that the sheriff's deed was issued to defendant about two months after his discharge as administrator. From that time he remained in the exclusive possession, occupancy, and use of the land, until the beginning of this action, on September 27, 1914. The plaintiffs Laura Stianson and Carrie Stianson became of adult age more than 9 years prior to the commencement of this action. The mortgage and the proceedings on foreclosure were all made matters of public record as they transpired. On February 29, 1916, after the entry of judgment in the action awarding plaintiffs and defendants each a one-fifth interest in the real estate as heirs and cotenants, the plaintiff Sam K. Stianson filed a disclaimer of any right or title thereto, and the judgment was modified to adjudge a dismissal of the action on its

merits as to him. The effect of the modified judgment was to award to Katherine, Laura, and Carrie Stianson each a one-fifth interest in the land, the other two-fifths interest remaining in the defendant. Defendant denied plaintiffs' allegations of fraud in suffering foreclosure proceedings, and in his purchase of the land at the foreclosure sale; alleged that both the estate and the plaintiff heirs were without funds or resources to pay the mortgage indebtedness; that plaintiffs Katherine Stianson and Laura and Carrie Stianson consented to his becoming purchaser of their interests at the foreclosure sale; that he had been in open, notorious, and adverse possession since the date of the sheriff' deed, with the full knowledge and acquiescence of all the plaintiffs; pleaded both the 6 and 10 years' statutes of limitation; and that plaintiffs had been guilty of laches which should estop them from maintaining this action.

The trial court found, in substance, that the defendant, while acting as administrator, permitted the mortgage to be foreclosed, and purchased the land with intent to defraud plaintiffs and deprive them of their interest in the estate; that none of the plaintiffs had any knowledge of the wrongful acts of the defendant in thus acquiring title to their interests in the property, and did not know of their rights until shortly before this action was commenced; that they had proceeded with due diligence in seeking to enforce their rights, and that plaintiffs never knew of and never consented to or acquiesced in the purchase by defendant of their interests.

[3] Appellant assigns as error the finding of the trial court that he suffered the mortgage to be foreclosed and purchased the land with intent to defraud plaintiffs and deprive them of their interest therein, contending that there is no evidence in the record to sustain such a finding. Appellant also assigns as error the finding of the trial court that plaintiffs had no knowledge of defendant's acts in acquiring title to the property, for the reason that such finding is against the preponderance of the evidence and wholly unsupported thereby. Appellant further assigns as error the finding of the trial court that the plaintiffs never acquiesced in his purchase and possession of the land, alleging that such finding is contrary to the clear preponderance of the evidence. A careful scrutiny of the evidence and of the entire rec-

ord fails to show any act or any conduct on the part of defendant from which an actual fraudulent intent might be inferred. So far as the record discloses he never attempted to conceal his acts, or by word or deed to deceive or mislead plaintiffs, or any of them, in his dealings with them or with the estate, or with the real property. It stands undisputed that the estate was insolvent, and that the general creditors received only about 75 cents on the dollar from the estate. It is shown by the testimony of the plaintiffs themselves that they were wholly without means to redeem or protect their interests from the foreclosure sale. The undisputed evidence shows that during the period of administration the rents and profits from the land were accounted for and turned into the estate in full. The trial court found, in substance, that from the date of the sheriff's deed, the defendant excluded plaintiffs from possession of the land; continued in uninterrupted possession thereof; received the rents and profits arising therefrom, during all the years from 1898; and paid the taxes on the land each year down to the time of the trial. The purchase of the entire estate at the mortgage sale by the respondent as cotenant was not in itself a fraudulent act. The trust relation as to his cotenants would arise only after he had acquired title at such sale, and fraud in that relation would have its inception only when he intended and attempted wrongfully to appropriate to his own use the interests of his cotenants. Mandeville v. Solomon, 39 Cal. 125. His relation to the property as cotenant and his relation to the same property as administrator of the estate to which it belonged are distinct. The consequences which flow from his acquisition of the title of his cotenants and those which flow from his purchase of property belonging to the estate of which he was administrator are not controlled by the same presumptions and rules. But the trust which would arise in either case is not an express, but a constructive or implied, trust. The relation of one acting as administrator, to real property which belongs to the estate must be considered separately.

[4] Respondent's counsel contend that an administrator, as such, becomes the trustee of an express trust as to the title to real property belonging to the estate. The fallacy of his assumption is apparent from the fact that the title descends to and becomes vested in the heirs upon the death of the decedent, sub-

ject only to its disposition for payment of creditors, and never becomes vested in the administrator in the course of administration proceedings. Under our statute this is true also of the title to personal property. Civil Code, § 1093. The administrator is vested, not with the title, but with certain powers and duties as a trustee, and where, through a wrongful act constituting a violation of his duties as such trustee, he acquires the title to property, either real or personal, belonging to the estate, he holds such title as trustee of a resulting trust, but not as trustee of an express trust. This is made entirely clear by section 1616, Civil Code, which declares that:

    "One who gains a thing by * * * the violation of a trust, or other wrongful act is * * * an involuntary trustee of the thing gained for the benefit of the person who would otherwise have had it"

—and by section 1609:

    "An involuntary trust is one which is created by operation of law."

It follows that Stianson, even if it be held that he violated his duty as administrator in acquiring title to the land, which we do not concede, holds it as trustee of a resulting or involuntary trust, and not as trustee of an express trust. Dillinger v. Kelley, 84 Mo. 561; Earl v. Halsey, 14 N. J. Eq 332; Johns v. Norris, 22 N. J. Eq. 102; Meanor v. Hamilton, 27 Pa. 137; Hollingsworth v. Spaulding, 54 N. Y. 636; Matter of Monroe, 142 N. Y. 490, 37 N. E. 517. For the purposes of this appeal, the character and inception of the alleged trust title are material to a consideration of the defenses of laches and the statutes of limitation, in determining the time from which such statutes begin to run, or from which laches may be imputed.

    [5, 6] Whether appellant's relation to the property be such as would arise out of wrongful dealings with the property of his cotenants or his relation to the property be that of administrator fraudulently seeking to misappropriate property belonging to the estate, a constructive trust only could arise out of his acts maleficio. As to an express trust, the rule is well settled that the running of statutes of limitation and laches begins at the time such trust is openly repudiated, or acts are done by the trustee which are hostile to, or in fraud of, the rights of the benefi-

ciaries, and of which they have actual knowledge, or of facts from which knowledge must be imputed to them. This case belongs in the class of constructive or involuntary trusts arising from alleged wrongful acts. So far as the results which flow from the existence of such a trust are concerned, it is wholly immaterial whether such acts are found to be fraudulent in fact, or be deemed fraudulent in law. The intent with which the acts were done becomes wholly immaterial. The trust arises with the same effect regardless of the intent. As to the title to this real estate, the defendant, prior to his purchase of the land, occupied no position of trust toward these plaintiffs, other than a duty to account, as administrator, for the rents and profits during and for the purposes of administration. Assuming for the purposes of this appeal that defendant by his purchase of the land became the trustee of an involuntary trust as to his cotenants, the bar of the statute of limitations and the effect of laches remain to be considered, and are decisive of this case. Appellant cites numerous authorities to the effect that neither laches nor statutes of limitation may be invoked by the trustee of an express trust in an action by the cestui que trust to enforce his rights. Perry on Trusts, § 863; Speidel v. Henrici, 120 U. S. 377, 7 Sup. Ct. 610, 30 L. Ed. 718; Lamberton v. Yeomans, 84 Minn. 109, 86 N. W. 894.

The doctrine announced in these authorities is applicable only to express trusts and has no application to constructive or involuntary trusts. Newsom v. Bartholomew County, 103 Ind. 526, 3 N. E. 163; Hecht v. Slaney, 72 Cal. 363, 14 Pac. 88; Matthews v. Simmons, 49 Ark. 468, 5 S. W. 797; Speidel v. Henrici, 120 U. S. 377, 7 Sup. Ct. 610, 30 L. Ed. 718. In Broder v. Conklin, 121 Cal. 282, 53 Pac. 699, that court says:

"No repudiation of a constructive trust by the trustee is required in order to set the statute of limitations in motion. A cause of action is created in favor of the beneficiary at the very moment the law creates the trust." Lammer v. Stoddard, 103 N. Y. 672, 9 N. E. 328.

As we have seen, no express trust was created by appellant's purchase and acquisition of the title. It is clear that plaintiff's right to an action in equity to establish an involuntary trust accrued the instant appellant acquired such title. To meet this

proposition, respondents contend that appellant's acquisition of the title of his cotenants was fraudulent in law, and that under section 60, Code Civil Procedure, a cause of action will not be deemed to have accrued until the discovery by the aggrieved parties "of the facts constituting the fraud." The finding of the trial court as to plaintiffs' discovery of the fraud is not sustained by the evidence or the law. In this case every fact essential to disclose and to constitute a constructive trust in appellant was matter of public record for more than 17 years before this action was begun, and for at least 9 years after the minors became of age. Plaintiffs must be held to have known that the land had belonged to the deceased, and that they had interests therein as his heirs; that defendant was acting as administrator of the estate; that the land was mortgaged, and that the estate was without money or resources to pay the mortgage; that the mortgage was foreclosed and the land bought in by defendant while acting as administrator.

Briefly stated, the following facts are undisputed: On the 19th day of January, 1898, the defendant was discharged as administrator of the estate of John K. Stianson. He purchased the land at foreclosure sale on March 27, 1897. The sheriff's deed was issued on the 27th day of March, 1898, and on that date was duly recorded in the office of the register of deeds of Day county, something more than two months after his discharge as such administrator. Since that time and up to the beginning of this action, on September 27, 1914, as found by the trial court, the defendant remained in the exclusive possession, occupancy, and use of the land. It is undisputed that Katherine Stianson and Laura and Carrie Stianson at all times lived in the immediate vicinity of, and sometimes visited, the land. Plaintiff Sam K. Stianson is no longer a party to this action. None of the plaintiffs was under any legal disability for over 9 years of this time. This action was begun at least 9 years after the disability of minority of two of the plaintiffs had ceased. During all this time the defendant was in sole possession, claiming title, paid the taxes, and received and appropriated to his own use rents and profits from the land, and was never called upon to account therefor by plaintiffs, nor did plaintiffs at any time offer to contribute to the payment of the mortgage indebtedness or taxes, or make

any claim to the land as tenants in common or otherwise. During all this time the foreclosure proceedings and the sheriff's deed to defendant were of public record, as were all matters relating to the administration of the estate. There is absolutely nothing in the record tending to show that defendant ever sought to or did mislead plaintiffs as to their legal rights, or sought to conceal, or attempt to conceal, from them any act on his part relative to this land, either as administrator or as cotenant.

[7, 8] Defendant had the right as cotenant, to purchase the property under an outstanding incumbrance for his own protection. Mandeville v. Solomon, 39 Cal. 125; Stevens v. Reynolds, 143 Ind. 467, 41 N. E. 931, 52 Am. St. Rep. 422; Reed v. Reed, 122 Mich. 77, 80 N. W. 996, 80 Am. St. Rep. 541; Marris v. Roseberry, 46 W. Va. 24, 32 S. E. 1019; McFarlin v. Leaman (Tex. Civ. App.) 29 S. W. 44; 17 Am. & Eng. Enc. of Law (2d Ed.) 639.

For more than 9 years these plaintiffs, with knowledge of all the facts, have slept upon their rights without seeking to participate in the benefits of the purchase by defendant of this property at the foreclosure sale, and without at any time offering to pay any share of the incumbrance on the land, or any of the taxes accruing thereon, for more than 17 years. Plaintiffs are in no position to allege that they were without knowledge, during at least 9 years, of every fact essential to the assertion of their legal rights. Public records are equivalent to actual knowledge of facts there appearing. Ft. Pierre v. Hall, 19 S. D. 663, 104 S. W. 470, 117 Am. St. Rep. 972; Coe v. Sloan, 16 Idaho, 49, 100 Pac. 354; Commissioners v. Renshaw, 23 Okl. 56, 99 Pac. 638, 22 L. R. A. (N. S.) 207, with monograph note. Lewis v. Welch, 47 Minn. 193, 48 N. W. 608, 49 N. W. 665, is a case largely relied upon by respondent. An administrator foreclosed a mortgage belonging to the estate and employed a third person to bid in the property for his benefit. The fact that the administrator was the real purchaser was concealed from the heirs, and did not appear of record. The administrator was held to be the trustee of an express trust because the mortgage itself was property of the estate; and, the land being proceeds of the mortgage, he was charged as trustee as though money had been received instead of land. It was held that because the plaintiff had no notice,

actual or constructive, that the purchase was for the benefit of the administrator, he was not guilty of laches, and that the statute of limitations did not run until the discovery of that fact. But the court reserved a decision as to what might have been the rights of the parties had the administrator himself openly bid in the property, paid the purchase price, and accounted for the same as administrator of the estate.

It is suggested that the decision of this court in Bidwell v. Smith, 23 S. D. 120, 120 N. W. 880, should rule this case. That case involved a breach of trust by an administrator, but did not involve any question of title to either real or personal property. Bidwell, while acting as administrator, was authorized by the county court to compromise a claim for $1,964 against the estate by paying $425. He thereupon bought and took an assignment of the claim to himself, and sued the heirs for $1,964. This court held him guilty of a breach of duty, and that the estate should be given the benefit of the transaction. That case did not hold that the acquisition by the trustee of an express trust, of a title to trust property, where the title had not been placed in him by the terms of the express trust, would result in the creation of an express trust as to such title, which appears to be the view of some of our associates.

[9]  While the rule is well settled that equity will not permit a cotenant to acquire an adverse claim to common property through administration proceedings or otherwise for his own benefit to the exclusion of his cotenants, it requires the exercise of reasonable diligence on the part of a cotenant, having or charged with knowledge of all the facts, in making an election to participate in the benefits of such transaction, and within a reasonable time to bear his portion of the expenditures necessarily involved therein. He will not be permitted to make such election a means of speculation by delaying until some circumstance, such as an increase in value of the land, may determine his course. We are clearly of the view that this case falls within the rule announced in Savage v. Bradley, 149 Ala. 169, 43 South. 20, 123 Am. St. Rep. 30. Plaintiffs, with full knowledge, actual and implied, of all the material facts affecting their legal rights, have so long acquiesced in the acts of the defendant as to render the granting of relief inequitable and to charge them with laches such as will

bar the assertion of their rights. Stevenson v. Boyd, 153 Cal. 630, 96 Pac. 284, 19 L. R. A. (N. S.) 525; Mandeville v. Solomon, supra; Craven v. Craven, 68 Neb. 459, 94 N. W. 604.

The order and judgment of the trial court are reversed.

GATES, J. (concurring in result). I think that my respected colleague has arrived at the correct result. I arrive at the same result, but by a somewhat different route.

A trust relation concerning the property of an estate arises between an administrator and the heirs of a deceased person regardless of the fact that title to the property may not be lodged in the administrator. Pomeroy, Eq. Juris. § 1077.

Section 1618, C. C., provides:

"A trustee may not use or deal with the trust property for his own profit, or for any other purpose unconnected with the trust, in any manner."

It is undisputed that the administrator dealt with property under his control as administrator for a purpose unconnected with the trust; therefore he violated that section of the Civil Code. Bidwell v. Smith, 23 S. D. 120, 120 N. W. 880. It will not do to say (or intimate by declining to concede) that he violated no duty in purchasing the land at foreclosure sale, inasmuch as there were no funds available to pay off the mortgage. In bidding at the foreclosure sale it was to his own personal interest to stifle competition. As administrator it was his duty to encourage competition. In Fulton v. Whitney, 66 N. Y. 548, the court well said:

"They were not bound to buy in the property for the benefit of the trust estate, having no trust funds applicable to that purpose; but they had no right, by undertaking to purchase for their own benefit, to create an interest in themselves hostile to their duty as trustees. As purchasers for their own benefit, it was to their interest to prevent competition at the sale, and to so manage that they could bid in the property at the lowest price, and this was directly in conflict with their duty as trustees. * * * No actual fraud on the part of the defendants is alleged or found, nor is it necessary that there should be. The object of the rule which precludes trustees from dealing for their own benefit, in matters to which their trust relates, is to prevent secret frauds by removing all inducement to attempt them. * * *

It is urged, on the part of the appellants, that this rule is not applicable to the present case, because the mortgaged premises formed no part of the trust estate. This objection was answered by Chancellor Walworth, in the case of Van Epps v Van Epps, 9 Paige [N. Y.] 241, by saying that the rule is not confined to trustees or others who hold the legal title to the property to be sold, but applies universally to all who come within its principle, which is that no party can be permitted to purchase an interest in property, and hold it for his own benefit, where he has a duty to perform, in relation to such property, which is inconsistent with the character of a purchaser on his own account."

Section 1623, C. C., provides:

"Every violation of the provisions of the preceding sections of this article is a fraud against the beneficiary of the trust."

This section makes the above violation a fraud regardless of the absence of intentional fraud. Section 60, subd. 6, C. C. P., declares that the following kind of action must be begun within 6 years:

"An action for relief on the ground of fraud, in cases which heretofore were solely cognizable by the court of chancery, the cause of action in such case not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud."

This is the kind of action that at common law was cognizable solely by a court of chancery. Therefore that section applies. I think it is entirely unnecessary to enter upon a lengthy discussion in regard to express trusts and resulting trusts. To my mind the above-quoted sections of statute dispose of the matter.

However, there was an entire failure of proof that the facts constituting the fraud were not discovered by respondents until a date within 6 years prior to beginning the action. What the proof did tend to show was that the respondents did not discover their supposed legal rights based upon such facts until shortly before the action was begun.

For the foregoing reason, and also because of newly discovered evidence, I concur in a reversal of the judgment and order denying a new trial.

WHITING, P. J. (concurring specially). Appellants contend that defendant was the trustee of a resulting trust. The

trial court was apparently of the theory that appellant was originally the trustee of an express trust; that he remained such trustee until notice of his renunciation of such express trust was brought home to respondents; and that such renunciation was brought home to respondents, not at the time they received knowledge of the facts showing that appellant was claiming adversely to them, but at the time that they received advice as to the legal effect of the facts of which they had received knowledge. I am of the opinion that appellant was a trustee of this property under an express trust at the time of his purchase at the foreclosure sale; that, as against his cestuis que trustent, he cannot claim that he renounced the express trust and became the trustee of a resulting trust by a wrongful purchase, and thus started running a period of adverse possession under which he could claim title; that he remained, as to the respondents, the trustee of an express trust, holding title for their benefit up to such time as they receive knowledge of facts showing that he had renounced such trust and was claiming adversely to them; that the placing of record, by appellant, of his sheriff's deed was not constructive notice to respondents, the cestuis que trustent of an express trust (see numerous cases cited pages 215 and 216 of 22 L. R. A. [N. S.]), but that respondents could and did receive constructive notice that appellant was claiming adversely, through actual notice of such facts as should have put them upon inquiry, which inquiry, if followed, would have revealed the fact of appellant's adverse claim (section 2452, C. C.); that the trial court erred in dating such constructive notice from the date when respondents were advised of the legal effect of what had transpired, instead of from the date of the knowledge of the facts constituting constructive notice, and that such error was prejudicial requiring a reversal of the cause. I am also of the opinion that a new trial should be granted on the ground of newly discovered evidence.