No. 13380

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

KENNETH F. JOHNSON,

     Plaintiff and Appellant,

-vs-

HOWARD R. JOHNSON and
CARRIE M. JOHNSON,

     Defendants and Respondents.

Appeal from:  District Court of the Fifteenth Judicial
           District
           Honorable L. C. Gulbrandson, Judge presiding

Counsel of Record:

    For Appellants:

        Habedank, Cumming and Best, Sidney, Montana
        Otto T. Habedank argued, Sidney, Montana

    For Respondents:

        John M. McCarvel argued, Great Falls, Montana

Submitted:  January 14, 1977

Decided: MAR 16 1977

Filed: MAR 16 1977

_Thomas J. Kearney_
                          Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

Plaintiff filed an action against his brother and his brother's wife seeking (1) a reconveyance of a half section of farmland to him, (2) to quiet title to the land, and (3) an accounting of crop proceeds. The district court of Sheridan County, the Honorable L. C. Gulbrandson, district judge, presiding, granted summary judgment to defendants. Plaintiff appeals.

Plaintiff's complaint in essence alleges a conveyance by him to his brother in 1953 by warranty deed absolute on its face; that the deed was given without consideration and upon an express oral agreement to reconvey; and a request for and refusal to reconvey on October 2, 1974. The complaint seeks to impress a trust on the land and compel a reconveyance to plaintiff.

Defendants' answer in substance denies the existence of an oral agreement to reconvey or any trust in the land and sets up the following affirmative defenses: (1) Laches, (2) estoppel, (3) statute of limitations, (4) waiver, (5) statute of frauds, and (6) adverse possession.

Pretrial discovery consisted of interrogatories by defendants and answers by plaintiff, depositions of plaintiff and both defendants, and documentary exhibits. Defendants moved for summary judgment which was granted by the district court.

The single issue on appeal is whether summary judgment was proper.

The record before the district court disclosed that John P. Johnson, father of plaintiff Kenneth Johnson and defendant Howard Johnson, owned a farm in Sheridan County, Montana. In

- 2 -

December 1962, the father and his wife deeded a half section of the farmland to Kenneth and another half section to Howard. At that time Kenneth was a single man with the United States Air Force in California.

In May 1953, the father traveled to California to secure a conveyance from Kenneth of his half section of the farmland. Although a dispute exists concerning the reason for this, the record establishes it was for one or both of these reasons: (1) As an estate planning precaution should Kenneth lose his life in the Korean conflict, (2) for fear the land would be lost in potential legal action arising out of Kenneth's involvement with a married woman. According to the record, the original idea was for Kenneth to transfer the land to his married sister, Arlene Petersen, who lived in California. However, she indicated Howard would be better able to take care of the land as he was living on the farm. By deed dated May 12, 1953, Kenneth conveyed the half section of land in question to Howard. This deed was absolute on its face and made no mention of a trust. On the face of the deed appeared $8.80 in federal documentary stamps indicating a consideration of $8,000 for the transfer. The documentary stamps were dated and initialed with Kenneth's initials. Kenneth denies receiving any money or consideration for the deed or transfer.

Kenneth signed and filed a federal gift tax return covering the calendar year 1953. He stated in this return that the transfer was a gift, that the value of the land at the time of transfer was $8,000 and that no trust was created.

Kenneth was discharged from the military service and returned home to Sheridan County in December 1955.

Thereafter Kenneth and Howard farmed the entire section of land. Kenneth, Howard and their father each received a share of the crops until the death of the father in November 1965. Following the father's death, Kenneth and Howard continued to farm the land with each receiving a share of the crop. The precise arrangement on sharing the crops, payment of taxes, and sharing of expenses is a subject of dispute in the record.

Kenneth married in 1959. An exhibit to Howard's deposition is a letter from their father to Howard dated January 2, 1960, stating "Kenneth knows that he has not any title or right to any of the homestead or half sec. that I bought from Sparling" and that Kenneth told him it would not work "so he don't need to tell himself or anyone that that 1/2 sec. is his". Kenneth denied knowledge of this letter. In March 1965, conveyances were executed by Howard and his wife vesting the half section of land in question in themselves as joint tenants. The deeds creating the joint tenancy were recorded in the office of the clerk and recorder of Sheridan County on March 1, 1965.

In 1968, Kenneth secured a loan from the Production Credit Association. In the loan application he was asked to list the land he owned. Kenneth admitted in his deposition that he did not list the half section in question.

In 1971, Howard mortgaged some land to the Federal Land Bank for $56,000. Included in the mortgage was the half section of land in question.

In 1973 and 1974, Kenneth delivered 1/3 of the crop to Howard pursuant either to an agreement between Howard and Kenneth or at Howard's request.

During the years they farmed the section of land together Kenneth listed his income as a share of the crops sold.

Kenneth's answers to defendants' interrogatories state there was an oral agreement by Howard to reconvey the land made at the farm in Sheridan County in December 1952, and in San Mateo, California in May 1953; that he has no writing substantiating this; that the witnesses to the oral agreement were himself, Howard, their father, and their sister, Arlene Petersen; that he deeded the property over to Howard at the request of his father and sister, Arlene Petersen; that he did not request recovery prior to October 2, 1974, because he had no reason to believe Howard was holding the land other than as a trustee prior to that time; that he in effect paid taxes on his half section by dividing the crops equally because his half section had more farmland than Howard's half section and Howard received the use of feed grown to offset the payment of taxes.

Kenneth's deposition reflects similar testimony in considerably more detail. Additionally, it indicates that on June 30, 1964, he went with Howard to Ludwig Tande's office in Plentywood, Montana, and signed an affidavit that he was single when he deeded the half section to Howard to enable Howard to mortgage the land in question.

No deposition was taken of Arlene Petersen, their sister.

The basis of the summary judgment granted defendants as reflected in the district court's order was: (1) There was no genuine issue as to any material fact; (2) Kenneth was guilty of laches; (3) he is estopped to allege ownership in the land; (4) his action is barred by the statute of limitations; and (5) he has waived any right, title or interest in the land.

- 5 -

The law relating to summary judgments, Rule 56, M.R.Civ.P., has been construed in detail in a long line of Montana cases and recently was substantially summarized in Harland v. Anderson, _____Mont._____, 548 P.2d 613, 615, 33 St.Rep. 363,365. In essence summary judgment is not a substitute for a trial; it can only be granted where the record discloses no genuine issue of material fact and the moving party is entitled to judgment as a matter of law; and where the absence of any genuine issue of material fact is disclosed by the record, the burden is on the party opposing summary judgment to come forward with evidence creating a genuine issue of material fact to be determined at trial. In Harland the Court said:

> "The primary policy and general purpose underlying
> Rule 56, M.R.Civ.P., is to encourage judicial economy
> through the prompt elimination of questions not
> deserving of resolution by trial."

With these principles in mind, we direct our attention to the defense of laches which is one basis on which the district court granted summary judgment to defendants.

The doctrine of laches was set forth at some length in Riley v. Blacker, 51 Mont. 364, 370, 371, 152 P. 758, applied in Hynes v. Silver Prince Mining Co., 86 Mont. 10, 281 P. 548 and Montgomery v. Bank of Dillon, 114 Mont. 395, 136 P.2d 760; and cited in Davis v.Steingruber, 131 Mont. 468, 311 P.2d 784:

> "Laches, considered as a bar independent of the
> statute of limitations, is a concept of equity;
> it means negligence in the assertion of a right;
> it is the practical application of the maxim, 'Equity
> aids only the vigilant'; and it exists when there
> has been unexplained delay of such duration or character
> as to render the enforcement of the asserted right
> inequitable. Therefore has it often been held by this
> court that: While a mere delay short of the period of
> the statute of limitations does not of itself raise the
> presumption of laches [citing cases] yet 'good faith and

reasonable diligence only can call into activity the powers of a court of equity, and, independently of the period fixed by the statute of limitations, stale demands will not be entertained or relief granted to one who has slept upon his rights. Consideration of public policy and the difficulty of doing justice between the parties are sufficient to warrant a court of equity in refusing to institute an investigation where the lapse of time in the assertion of the claim is such as to show inexcusable neglect on the part of the plaintiff, no matter how apparently just his claim may be; and this is particularly so where the relations of the parties have been materially altered in the meantime.' [Citing cases] What constitutes a material change of condition has been the subject of much judicial discussion and some judicial dissention; but whatever doubt there may be as to other circumstances, it never has been questioned, to our knowledge, that the death of one of the parties to the transaction is such a change. 'A specific application of the general rule just stated is in the refusal of the courts to afford relief to one who has lain idly by until the important witnesses to the transaction involved have died.* * *'"

In this case there is a genuine issue of material fact concerning the existence of an involuntary trust by operation of law in 1953, at the time the half section of land was deeded by Kenneth to Howard. The record is sufficient to establish a factual issue as to whether the transfer was without consideration (resulting trust) or a transfer based on an oral agreement to reconvey (constructive trust).

Therefore we must assume, arguendo, that the half section of land was impressed with a trust in favor of Kenneth by operation of law in 1953. Thereafter the record shows, without contradiction, the following facts actually known by Kenneth or of which he is chargeable with knowledge:

1. The deed of the half section of land from Kenneth to Howard, in 1953, was absolute on its face, indicated a consideration of $8,000 by federal documentary stamps on its face and was recorded in May 1953.

- 7 -

2. Kenneth filed a federal gift tax return in 1954 covering the 1953 transfer in which he stated under penalties of perjury that the transfer was a gift to Howard and that no trust was created in 1953.

3. In June 1964, Kenneth executed an affidavit that he was a single man at the time of the 1953 deed to enable Howard to mortgage the land in question.

4. In March 1965, the alleged trustee, Howard, executed and recorded conveyances vesting the land in question in Howard and his wife as joint tenants.

5. In November 1965, the father died.

6. In 1968, Kenneth applied for a loan in which he was asked to list the land he owned and he did not list the land in question.

7. In 1973 and 1974, Kenneth delivered 1/3 of the crop to Howard. Additionally, Kenneth stated in his answers to interrogatories and in his deposition that the first time he asked Howard to reconvey the land back to him was on October 2, 1974, because he had no reason to believe Howard was holding the land other than as trustee and would refuse to reconvey.

We hold that under these circumstances laches is established as a matter of law. Kenneth's is a stale claim based on a transaction that occurred more than 21 years prior to his first request for reconveyance and more than 23 years before suit was filed. There was a material change in circumstances by reason of the father's death some 9 years prior to Kenneth's first request for reconveyance and more than 11 years before suit was filed. The alleged trustee, Howard, was in the process of mortgaging the property in June 1964, a fact known to Kenneth.

- 8 -

The alleged trustee, Howard, placed the property in joint tenancy with his wife in March 1965, and recorded the conveyances, all in derogation of the powers and duties of a trustee.

Kenneth cites Opp v. Boggs, 121 Mont. 131, 193 P.2d 379, for the rule that the statute of limitations does not begin to run with respect to a constructive trust until refusal by the trustee to carry out the trust by reconveyance. However, laches, unlike the statute of limitations, begins to run when the trust is created by operation of law. The rule is stated in this language in 76 Am Jur 2d, Trusts, §597, p. 804:

> "Laches constitutes a defense to a suit to declare and enforce a constructive trust; and for the purpose of the rule, repudiation of the constructive trust is not required, and time runs from the moment that the law creates the trust, which is the time the cause of action arises."

See also: Stianson v. Stianson, 40 S.D. 322, 167 N.W. 237, 6 A.L.R. 280.

Here, Kenneth has slept on the claim he now seeks to enforce for over 23 years. A material witness to the transaction died more than 10 years prior to suit. The alleged trustee committed an act in derogation of the trust some 12 years prior to suit, viz. mortgaging the property. The alleged trustee committed another act in derogation of the alleged trust more than 11 years prior to suit of which Kenneth is chargeable with knowledge, viz. placing the property in joint tenancy with his wife. Laches is established as a matter of law, justice cannot now be accomplished because of the lapse of time and the material change in the circumstances, and equity will not intercede 23 years later to aid Kenneth in establishing a claim he has failed to assert for over 20 years.

- 9 -

As Kenneth's claim is barred by laches as a matter of law under the undisputed facts set forth above, no useful purpose would be served by discussing the additional grounds on which the district court predicated its summary judgment.

The summary judgment is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices.