No. 13642

IN THE SUPREME COURT OF THE STAT OF MONTANA

1977

---

EDWARD V. BRABENDER and FRANCES
BRABENDER, husband and wife,

Plaintiffs and Appellants,

-vs-

KIT MANUFACTURING COMPANY, a
corporation, and FALLS MOBILE HOME
CENTER, INC.,

Defendants and Respondents.

---

Appeal from: District Court of the Eighth Judicial District,
Honorable Truman G. Bradford, Judge presiding.

Counsel of Record:

For Appellants:

John R. Christensen argued, Stanford, Montana

For Respondents:

John Atkins argued, Helena, Montana

---

Submitted: June 3, 1977

Decided: AUG 30 1977

Filed: AUG 30 1977

_Thomas J. Kearney_
Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

Plaintiffs appeal from a summary judgment granted to defendant in which the court refused to rescind a purchase contract and awarded defendant attorney fees.

Plaintiffs Edward V. Brabender and his wife entered into a purchase contract with Falls Mobile Home Center, Inc. (Falls) of Great Falls, Montana, on September 21, 1971 for the purchase of a new 1972 Golden State Mobile home to be manufactured by Kit Manufacturing Company (Kit) of Caldwell, Idaho. The purchase contract referred to an attached Kit Manufacturing Company Order form which designated the specifications the Brabenders desired included on their new mobile home. On November 16, 1971, plaintiffs and Falls executed a retail installment contract which Falls assigned to the First National Bank of Great Falls. After a down payment and trade-in allowance on their old mobile home, the plaintiffs owed $1,604.22 which was to be paid in six equal consecutive installments beginning in January, 1972, and ending in June, 1972. In case of a delinquent installment, the retail installment contract provided for a late charge plus a reasonable attorney fee if the matter was referred to an attorney.

On November 25, 1971, the mobile home was delivered to plaintiffs at Green Acres Trailer Park, Lewistown, Montana. Plaintiffs inspected the mobile home and found fault with it in various particulars. In a letter to Kit dated November 29, 1971, plaintiffs complained among other things that the frame of the mobile home was bent, that the roof was buckled and banging, that the siding and trim were loose and rattling, that the floor boards were loose and nails were coming through, that there was an un-patched hole in the underflooring, that the rear bedroom window screen was torn, and that the kitchen countertops were not joined properly. They concluded their letter stating:

"We cannot and will not accept this mobile home and we want immediate action from you on this or we will be obliged to take action ourselves."

That same day Al Lawson, the president of Falls and Gene Bumgarner, sales manager of Kit, inspected the mobile home. On December 7, 1971, Gene Bumgarner responded to plaintiffs' November 29 letter, stating that he did not see any structural damage to the mobile home's frame, but that he would send a serviceman to perform the other necessary repairs to plaintiffs' home. Kit's serviceman arrived December 13, 1971 to make the repairs, but plaintiffs, contrary to the advice of their then counsel, refused to let the serviceman make them. On December 30, 1971 Gene Bumgarner sent a letter to plaintiffs by certified mail reciting the prior events and informing them that Kit still stood ready to perform warranty repair, but because plaintiffs refused to allow Kit to make the repairs, they would not assume responsibility for damages which might occur due to nonrepair of existing warranty claims.

Plaintiffs did not communicate further with either Falls or Kit until the filing of this law suit over four years later. On the advice of their then counsel, plaintiffs paid on schedule the installments due First National Bank of Great Falls, as assignee of the retail installment contract. That contract was fully executed with the payment of the June, 1972 installment. Plaintiffs continued to live intermittently in the mobile home from the time of its delivery to the Green Acres Trailer Park until May, 1973. From 1973 to present the mobile home has remained at the trailer park unoccupied.

On February 20, 1976 plaintiffs filed suit against Falls and Kit seeking rescission of the purchase contract and a refund of the purchase price plus interest, or in the alternative, seeking damages in the amount of $7,000 plus interest.

Defendant Falls answered alleging several affirmative

defenses, among other things. Falls alleged that the attempted rescission was ineffective and that plaintiffs had not acted soon enough in bringing suit and should not, more than four years later, be heard to complain of the defects in the mobile home. As a counterclaim Falls claimed attorney fees under the contract. Defendant Falls filed affidavits, requests for admissions, and interrogatories. It then filed a motion for summary judgment on the grounds that plaintiffs had failed to comply with the statutory requirements for rescission, that the purchase contract was fully executed and that plaintiffs had accepted the mobile home. Later it filed supplemental grounds alleging that the suit was not commenced within four years after the cause of action accrued and therefore plaintiffs' claims were barred by section 87A-2-725, R.C.M. 1947.

Defendant Kit answered plaintiffs' complaint alleging as defenses that plaintiffs' claims were barred by section 87A-2-725, and by laches, waiver and estoppel. Defendant Kit was granted summary judgment.

Defendant Falls was later granted summary judgment. Following a further hearing, the district court granted defendant Falls judgment against plaintiffs for $1,200 attorney fees. Plaintiffs appealed from the judgment in favor of defendant Falls.

The district court based summary judgment in favor of defendant Falls on its findings and conclusions that: (1) Plaintiffs did not comply with the statutes governing rescission of contracts; (2) plaintiffs waived their objections to the alleged defects in the mobile home by their wrongful refusal to allow defendant Kit's repairman to remedy their objections; (3) plaintiffs accepted the mobile home by their continued use and occupancy of it and by their full payment of the contract; (4) plaintiffs suit to rescind the contract was barred by laches and estoppel; and

(5) the amount and existence of damages claimed was purely speculative and conjectural. The district court's award of attorney fees to defendant Falls was based on its findings and conclusions that: (1) There was a single integrated contract consisting of the purchase contract, the Kit order form, and the retail installment contract; (2) the retail installment contract provided for attorney fees in case of default; and (3) this provision was reciprocal under section 93-8601.1, R.C.M. 1947.

Plaintiffs raise two issues on appeal:

1. Whether the pleadings, interrogatories, affidavits, and records show any genuine issues of material fact precluding summary judgment; and

2. Whether the award of attorney fees to defendant Falls was proper.

Summary judgment is not a substitute for trial; it can only be granted where the record discloses no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Where the absence of any genuine issue of material fact is disclosed by the record, the burden is on the party opposing summary judgment to come forward with evidence creating a genuine issue of material fact to be determined at trial. Johnson v. Johnson, ____Mont.____, 561 P.2d 917, 919, 34 St.Rep. 162 (1977); Harland v. Anderson, 169 Mont. 447, 548 P.2d 613, 615, 33 St.Rep. 363 (1976). The party opposing the motion will be indulged to the extent of all inferences which may be reasonably drawn from the offered proof. Harland v. Anderson, 548 P.2d at 615.

We turn our attention to the defense of laches. Laches is negligence in the assertion of a right. It exists when there has been an unexplained delay of such duration or character as to render the enforcement of an asserted right inequitable.

- 5 -

Quoting from Johnson we stated:

> " * * * Considerations of public policy and
> the difficulty of doing justice between the
> parties are sufficient to warrant a court of
> equity in refusing to institute an investi-
> gation where the lapse of time in the assertion
> of the claim is such as to show inexcusable
> neglect on the part of the plaintiff, no matter
> how apparently just his claim may be; and this
> is particularly so where the relations of the
> parties have been materially altered in the
> meantime." Johnson v. Johnson, 561 P.2d 920;
> Riley v. Blacker, 51 Mont. 364, 152 P. 758 (1915).

Prior to the filing of this law suit, the record shows that the last written communication from the plaintiffs to either defendant was plaintiffs' letter of November 29, 1971 to defendant Kit. The last oral communication between the parties was on December 7, 1971. After defendant Kit's letter of December 30, 1971 to plaintiffs, plaintiffs had no further contact with either defendant until this suit was filed on February 20, 1976. The record is barren of any excuse for this long delay. The applicable statute of limitations, section 87A-2-725(1), R.C.M. 1947, provides:

> "An action for the breach of any contract for
> sale must be commenced within four years after
> the cause of action has accrued. * * *"

In Shell v. Strong, 151 F.2d 909, 911 (10th Cir. (1945), it is stated:

> "A court of equity is not bound by the statute
> of limitations, but, in the absence of extra-
> ordinary circumstances, it will usually grant
> or withhold relief in analogy to the statute
> of limitations relating to actions at law of like
> character. Under ordinary circumstances, a suit
> in equity will not be stayed for laches before,
> and will be stayed after, the time fixed by the
> analogous statute, but if unusual conditions or
> extraordinary circumstances make it inequitable
> to allow the prosecution of a suit after a
> briefer, or to forbid its maintenance after a
> longer, period than that fixed by the analogous
> statute, a court of equity will not be bound by
> the statute, but will determine the extraordinary
> case in accordance with the equities which con-
> dition it. When a suit is brought within the
> time fixed by the analogous statute, the burden
> is on the defendant to show, either from the

- 6 -

face of the complaint or by his answer, that extraordinary circumstances exist which require the application of the doctrine of laches. On the other hand, when the suit is brought after the statutory time has elapsed, the burden is on the complainant to aver and prove circumstances making it inequitable to apply laches to his case." 151 F.2d 911.

Plaintiffs did not bring this suit within the time fixed by the analogous statute of limitations, nor have they given any reason for their delay in bringing suit. To the contrary, they used the mobile home for 1-1/2 years after it was delivered to them, and after moving out of it, they left it unoccupied. Defendant Kit notified plaintiffs that in light of plaintiffs refusal to allow Kit to make the requested repairs, it would not assume responsibility for damages resulting from failure to make those repairs. In view of these facts, we hold that it would now be inequitable to allow plaintiffs to attempt to rescind the contract. Plaintiffs' suit for rescission is barred by their laches.

Plaintiffs' second claim seeks damages for breach of contract. This claim is now barred by the applicable four year statute of limitations. Section 87A-2-725(1).

Plaintiffs contend that defendant Falls may not rely on the affirmative defenses of laches and the statute of limitations to bar plaintiffs' suit because they were not affirmatively plead in its answer as required by Rule 8(c), M.R.Civ.P. Rule 8(c) must be read in connection with Rule 8(e), M.R.Civ.P., which states that no technical forms of pleading or motion are required, and with Rule 8(f), M.R.Civ.P., which requires that all pleadings be construed so as to do substantial justice. Defendant Falls' answer denominates three affirmative defenses which in substance are: (1) Failure to state a claim for relief, (2) ineffective rescission and waiver of the defects, and (3) estoppel, laches and statute of limitations. Although defendant Falls did not

- 7 -

specifically denominate his defenses as laches or statute of limitations, the allegations of the second and third affirmative defenses, which are detailed at length, contain certain dates of all oral and written communications between plaintiffs and defendants, show that more than four years elapsed between the signing of both the purchase and retail installment contracts and plaintiffs' filing of the law suit, and state:

> "Plaintiffs should be estopped by their conduct, both their affirmative acts and subsequent inaction, and the lapse of time, from now attempting to repudiate or rescind the contract * * * or to seek any of the relief asked for in the complaint."

A reading of defendant Falls affirmative defenses reveals that plaintiffs had adequate notice that defendant Falls intended to raise the defenses of laches and statute of limitations. In light of Rules 8(e) and 8(f), M.R.Civ.P., we hold that those defenses were adequately plead in defendant Falls' answer.

Plaintiffs' second issue on appeal is whether defendant Falls was entitled to an award of attorney fees. The purchase contract between plaintiffs and defendant Falls made no provision for attorney fees in case of suit on the contract. The retail installment contract between plaintiffs and defendant Falls provided for attorney fees in case suit was brought to recover delinquent payments. Section 93-8601.1, R.C.M. 1947, states:

> "Whenever by virtue of the provisions of any contract or obligation in the nature of a contract, made and entered into at any time after the effective date of this act, one party to such contract or obligation has an express right to recover attorney fees from any other party to the contract or obligation in the event the party having that right shall bring an action upon the contract or obligation, then in any action on such contract or obligation all parties to the contract or obligation shall be deemed to have the same right to recover attorney fees, and the prevailing party in any such action, whether by virtue of the express contractual right, or by virtue of this act, shall be entitled to recover his reasonable attorney fees from the losing party or parties."

Plaintiffs contend that the provision in the retail in-

stallment contract cannot be made a basis for an award of attorney fees under section 93-8601.1 where the retail installment contract has been fully executed. Defendants argue that the purchase contract and the retail installment contract should be read together as an integrated contract.

The purchase contract did not specifically incorporate the terms of this retail installment contract, but provided that in case the purchase contract was not a cash transaction, the purchaser " * * * before, or at the time of delivery of the trailer, mobilehome or vehicle ordered * * * will either execute a chattel mortgage, conditional sales contract, or such other form of agreement as may be required by law." Nor were the two contracts executed contemporaneously. The purchase contract was signed September 21, 1971; the retail installment contract was signed November 16, 1971. Most significantly, the retail installment contract was fully executed in July 1972, over 3-1/2 years prior to the filing of this suit. In light of these facts we deem it inequitable to award defendant Falls attorney fees in plaintiffs' action to rescind the purchase contract.

Defendant Falls contends that this case is indistinguishable from Compton v. Alcorn, ____Mont.____, 557 P.2d 292, 33 St. Rep. 1185 (1976), in which defendant, the seller of a mobile home, was awarded attorney fees in the purchasers' suit to rescind a retail installment contract. Compton is distinguishable on two bases: (1) It was on suit to rescind a retail installment contract, not a purchase contract; (2) the retail installment contract was not fully executed, whereas here it was.

The portion of the summary judgment awarding defendant Falls attorney fees is reversed. The award of summary judgment in favor of defendant Falls is affirmed.

_____
                              Justice

- 9 -

We concur:

_____
       Chief Justice

_____

_____

_____
       Justices