**TILBURY et al. v. OREGON STEVEDORING CO., Inc., et al.**

(Circuit Court of Appeals, Ninth Circuit. August 3, 1925.)

No. 4542.

Monopolies ⬤—12(2)—Complaint held not to allege violation of Sherman Anti-Trust Law or Clayton Act in organizing longshoremen employers' association.

Allegations of illegal combination between ship owners and operators controlling nearly all port's longshore and stevedoring business, that restrictions and interferences were by establishing water front employers' association, establishing a hiring hall, making rules and regulations governing employment and conduct of longshoremen, establishing registration system, fixing and enforcing uniform wages for longshoremen, and limiting employment to favored longshoremen, and refusing to employ any one discharged by other defendants, *held* not to show impeding of commerce or violation of Sherman Anti-Trust Law (Comp. St. §§ 8820–8823, 8827–8830) or Clayton Act, or that defendants had other purpose than to regulate fairly transaction of their business.

Appeal from the District Court of the United States for the District of Oregon; Charles E. Wolverton, Judge.

Suit by Charles E. Tilbury and another against the Oregon Stevedoring Company, Inc., and others, to restrain defendants from violating the Sherman Anti-Trust Act and for damages under the Clayton Act. From a decree dismissing the complaint, plaintiffs appeal. Affirmed.

Lord & Moulton, of Portland, Or., for appellants.

Andros, Hengstler & Dorr, of San Francisco, Cal., and Wilson & Reilly, of Portland, Or., for appellee Luckenbach S. S. Co., Inc.

A. C. Spencer and Roy F. Shields, both of Portland, Or., for appellee San Francisco & P. S. S. Co.

7 F.(2d)—1

Charles H. Carey, James B. Kerr, Charles A. Hart, Omar C. Spencer, and Charles E. McCulloch, all of Portland, Or., for other appellees.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

HUNT, Circuit Judge. From a decree entered upon motion to dismiss a complaint in a suit brought to restrain the appellees from violating the Sherman Anti-Trust Act (Comp. St. §§ 8820–8823, 8827–8830), and acts amendatory thereof, and for damages in accordance with the provisions of the Clayton Act (38 Stat. 730), plaintiffs appeal.

The complaint charges that an illegal combination existed among shipowners and operators at the port of Portland, controlling nearly all of the Portland longshore and stevedoring business to and from ships engaged in interstate and foreign transportation; that the restrictions and interferences are by (1) establishing a water front employers' association among themselves as members, with a constitution and by-laws in the form of an unincorporated association; (2) establishing a hiring hall, through which they would exclusively employ longshoremen; (3) making rules and regulations governing such employment and the conduct of longshoremen; (4) establishing a registration system requiring all longshoremen to make application to the manager for permission to work in loading and discharging ships in interstate and foreign commerce, who, after referring the application to a person who had a list of persons who were objectionable to respondents (which complainants allege on information and belief is because of affiliation with labor organizations), would, if not objected to, put the

applicant to work for a probationary period, and afterward would register applicant and issue a card to him and permit him to work regularly, or if the applicant were rejected because his name was on the list, or for other cause, he could not secure employment with the defendants; (5) fixing, by agreement among themselves, and enforcing a uniform wage for longshoremen; (6) limiting employment by defendants to favored longshoremen and refusing to employ any one discharged by other defendants.

It is alleged that, as defendants controlled practically all the business of loading and discharging cargoes in interstate and foreign commerce, except such as is handled by the Portland Stevedoring Company, which does but a small part, men who were refused employment cannot follow their occupation unless such longshoremen could secure employment with the Portland Stevedoring Company. Further allegations are that defendants gave public notice that unless longshoremen presented themselves to the hiring hall and obtained permit and registration card, they would not be allowed to work for defendants; that plaintiff Tilbury, not having so applied, has been unable to obtain employment as a longshoreman at Portland, and thus has been deprived of a livelihood in the work of forwarding commerce and discharging vessels engaged therein; that plaintiff Tilbury applied for, but was refused, work, being informed that he was on a list of longshoremen whom defendants would not hire; that plaintiff Marks was employed for two years through the hiring hall, but was discharged in August, 1924, for reasons which he alleges were unknown to him, and has been unable to procure employment in his vocation in Portland. Plaintiffs alleged irreparable injury, and that suit is brought in behalf of others situated as are plaintiffs.

We agree with the District Court, in the view that the facts fail to show that commerce has in any way been impeded, or that the defendants had any purpose other than to regulate fairly the transaction of the business in which they are engaged. Anderson v. United States, 171 U. S. 604, 19 S. Ct. 50, 43 L. Ed. 300. The gravamen of the complaint is not that exchange or transfer or movement of goods has been impeded or interfered with, or that there has been any restriction upon the business of loading freight upon ships bound for ports in other states, but merely that certain persons have not been employed as longshoremen at Portland, and it is far from obvious that the consequences of the acts pleaded are or will be to restrain interstate commerce in the least.

In United Leather Workers I. U. v. Herkert et al., 265 U. S. 457, 44 S. Ct. 623, 68 L. Ed. 1104, 33 A. L. R. 566, the court said that it was only when the intent or necessary effect upon interstate commerce in the article "is to enable those preventing the manufacturer to monopolize the supply, control its price, or discriminate between its would-be purchasers that the unlawful interference with its manufacture can be said directly to burden interstate commerce." In the later case of Industrial Association of San Francisco v. United States, 45 S. Ct. 403, 69 L. Ed. —— (April 13, 1923), the court, considering the activities of a number of associations in San Francisco, which acted in combination to regulate building operations within a limited local area by means of the permit system under which there was a limit of sales of certain building materials, California productions, to builders who supported the plan, so as to prevent domination by the labor unions, held that the facts showed no substantial obstruction to interstate commerce and did not unduly obstruct the free flow of such commerce. The court, through Justice Sutherland, after reviewing many of the earlier cases and carefully distinguishing their application, referred specifically to United Mine Workers of America v. Coronado Coal Co., 259 U. S. 344, 42 S. Ct. 570, 66 L. Ed. 975, 27 A. L. R. 762, where it was held that a conspiracy and intent to obstruct coal mining, although effectual in preventing a part of the product of the mine from passing into interstate commerce, would not be a direct obstruction to interstate commerce in coal if there were no intention to restrain such commerce or no proof of such substantial effect upon it as to make such intention reasonably inferable.

As applicable to the case under examination by the court, Justice Sutherland said: "If an executed agreement to strike with the object and effect of closing down a mine or a factory, by preventing the employment of necessary workmen, the indirect result of which is that the sale and shipment of goods and products in interstate commerce is prevented or diminished, is not an unlawful restraint of such commerce, it cannot consistently be held otherwise in respect of an agreement and combination of employers or others to frustrate a strike and defeat the strikers by keeping essential domestic building materials out of their hands and the hands of their sympathizers, because the

means employed, whether lawful or unlawful, produce a like indirect result. The alleged conspiracy and the acts here complained of, spent their intended and direct force upon a local situation, for building is as essentially local as mining, manufacturing or growing crops, and if, by a resulting diminution of the commercial demand, interstate trade was curtailed either generally or in specific instances, that was a fortuitous consequence so remote and indirect as plainly to cause it to fall outside the reach of the Sherman Act." United States v. Whiting (D. C.) 212 F. 466; Trenton Potteries Co. v. United States (C. C. A.) 300 F. 550; Finley v. United Mine Workers (C. C. A.) 300 F. 972.

In National League Baseball Club v. Federal Baseball Club, 269 F. 601, 50 App. D. C. 165, it was said that through the definitions under the acts of Congress relevant thereto runs the idea that trade and commerce "require the transfer of something, whether it be persons, commodities or intelligence, from one place or person to another. The concomitant of this concept is the principle approved by the Supreme Court of the United States, that 'importation into one state from another is the indispensable element,' the test of interstate commerce."

We conclude that it is in accord with reason as well as the doctrine of the adjudged cases, to hold that an agreement among employers whereby the hiring of men to work as longshoremen is governed by rules such as obtained in the association complained of with respect to their qualifications and wages, is in no respect violative of the acts of Congress.

The decree is affirmed.