No. 13822

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

---

DONNA S. FITZGERALD, Individually and as
Administratrix of the Estate of RONALD E.
FITZGERALD, Deceased,

Plaintiff and Respondent,

-vs-

AETNA INSURANCE COMPANY, MARKEL INSURANCE
COMPANY and CANADIAN SURETY COMPANY,

Defendants and Appellants.

---

Appeal from: District Court of the Eighth Judicial District,
Honorable William Coder, Judge presiding.

Counsel of Record:

For Appellants:

Church, Harris, Johnson and Williams, Great Falls,
Montana
Cresap S. McCracken argued, Great Falls, Montana

For Respondent:

Marra, Wenz and Iwen, Great Falls, Montana
Joseph Marra argued, Great Falls, Montana
Dola Wilson, Great Falls, Montana

---

Submitted: January 18, 1978

Decided APR - 3 1978

Filed: APR - 3 1978

_____ Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Aetna Insurance Company appeals from an order of the District Court, Eighth Judicial District, Cascade County, denying its motion for summary judgment and granting partial summary judgment in favor of the plaintiff Fitzgerald.

In December 1973, Donna Fitzgerald filed suit in State District Court against Turner Valley Transport (Turner Valley), and Emmanuel St. Louis (St. Louis), both motor carriers from Edmonton, Alberta, Canada, and Rudolph Collicott, a truck driver, for allegedly causing the wrongful death of her husband, Ronald E. Fitzgerald. Fitzgerald was killed November 23, 1973, in a collision near Lewistown, Montana, between his truck and a tractor-trailer unit driven by Collicott. Collicott was transporting a load of pipe for Turner Valley from Edmonton, Alberta, to Gillette, Wyoming. Turner Valley owned the trailer involved in the collision, but had hired both the tractor and the driver Collicott from St. Louis.

The defendants Turner Valley, St. Louis, and Collicott removed the wrongful death suit to Federal Court. A nonjury trial there resulted in a judgment against Turner Valley and Collicott for $190,739.00, plus costs, and in a finding that St. Louis was not bound to indemnify Turner Valley. No appeal was taken from this judgment.

At the time of the accident Turner Valley was insured by Markel Insurance Company of Canada (Markel) under a primary vehicle policy covering wholly owned and scheduled vehicles, and by Aetna Insurance Company (Aetna) under a composite mercantile policy affording a limited form of automobile liability coverage. Aetna defended Turner Valley in the Federal District Court trial after Markel dropped its

-2-

defense of Turner Valley. St. Louis was insured by Canadian Surety Company (Canadian Surety).

On July 30, 1975, Donna Fitzgerald filed this suit in the Cascade County District Court against Aetna, Markel, and Canadian Surety to collect on the judgment granted her in Federal Court. In her complaint she prayed for the amount of the judgment she had received in Federal Court, plus interest; for punitive damages; for attorney fees and costs; and for damages for mental distress allegedly caused her because of the defendants' lack of good faith and malicious and oppressive conduct.

Aetna twice removed the suit to Federal Court, but each time plaintiff was successful in remanding it to state court. Markel and Canadian Surety were eventually dismissed from the suit for lack of personal jurisdiction.

Following pretrial discovery, Aetna moved for summary judgment on all issues and Donna Fitzgerald moved for partial summary judgment as to the amount Aetna allegedly owed her as Turner Valley's insurer under the Federal Court judgment. The District Court entered an order denying Aetna's motion for summary judgment and granting plaintiff's motion for partial summary judgment.

Aetna appeals from this order. It has also filed a petition for a writ of supervisory control (Docket No. 13888) in conjunction with its appeal requesting this Court to direct the District Court to dismiss plaintiff's claims for punitive damages and to enter summary judgment in its favor on the merits of the case.

Aetna raises the following issues on appeal and in its application for a writ of supervisory control:

1. Did the District Court err in denying Aetna's

motion for summary judgment and in entering partial summary judgment for plaintiff?

2. Is a claim for punitive damages allowable under section 17-208, R.C.M. 1947, in a suit by a third party against an automobile liability insurer to collect a judgment previously entered against the insured?

The first issue relates to policy coverage and to the validity of certain policy defenses which Aetna asserts protects it from liability against the insured, and therefore from liability against plaintiff: (1) Aetna's insurance contract with Turner Valley covered only "nonowned" vehicles; and (2) certain "statutory conditions" in Aetna's policy, inserted in compliance with Alberta, Canada law, suspended coverage while a covered vehicle was engaged in an illegal operation or while an intoxicated driver was driving a covered vehicle.

Aetna contends that any one of these is sufficient to bar it from liability. Fitzgerald responds that Aetna's policy covered the tractor-trailer unit and that Turner Valley did not violate any of the "statutory conditions". Fitzgerald further argues that even if Turner Valley did violate any of those conditions, Interstate Commerce Commission regulations prevent Aetna from asserting them as defenses. Aetna counters that if Turner Valley and thus, Aetna, is to be held to I.C.C. regulations even though Turner Valley did not have an I.C.C. permit to operate, Fitzgerald should also be held to those same regulations. The I.C.C. regulations in force at the time of the accident waived an insurer's policy defenses as to the first $25,000.00 of insurance. Because of our decision that no policy conditions were violated, we need not discuss the issue of

-4-

whether and to what extent I.C.C. regulations waived Aetna's policy defenses.

The insurance policy which Aetna sold to Turner Valley was a "Composite Mercantile Policy" for fire insurance, inland marine insurance, robbery and burglary insurance, as well as general comprehensive liability insurance. Included within the liability insurance was an "S.P.F. No. 6 Standard Non-owned Automobile Policy". Section A of that policy, entitled "Third Party Liability" contained the basic automobile insuring agreement:

> "The Insurer agrees to indemnify the Insured against the liability imposed by law upon the Insured for loss or damage arising from the use or operation of any automobile not owned in whole or in part by or licensed in the name of the Insured * * *."

Both parties agree that the tractor-trailer unit is an "automobile" within the terms of the policy. The difficulty arises because of the split ownership of the unit. Turner Valley owned only the trailer; it hired both the tractor and the driver Collicott from St. Louis. Item 5 in the definition section of the policy, however, provides that for purposes of the Insurer's liability under Section A of the policy, a motor vehicle and a trailer attached to it constitute one automobile. Therefore, we shall treat this unit as one automobile.

Additionally, Turner Valley's insurance policy form is expressly made a part of the insurance contract. Item 5 of that form designates the coverage provided for "hired automobiles". Typed in this space are these words: "NOT ANTICIPATED, COVERED IF ANY".

Both parties contend that the language of the basic automobile insuring agreement in the policy is unambiguous,

although each interprets this language differently: Fitzgerald argues that it covers automobiles which are partially owned by the insured; Aetna argues that it does not.

In our view, the language of the basic automobile insuring agreement is ambiguous because it is subject to two repugnant and inconsistent meanings. The language could be construed to provide coverage for an automobile not wholly owned or not partially owned by Turner Valley in which case coverage would be afforded here. On the other hand, the language could be construed to provide coverage only for an automobile which is neither owned in whole nor in part by Turner Valley in which case there would be no coverage in this accident.

Where an ambiguity in an insurance contract exists, every doubt should be resolved in favor of the insured and the policy should be strictly construed against the insurer. Alpha Real Estate Development, Inc. v. Aetna Life & Casualty Co., (1977), ____ Mont. ____, 570 P.2d 585, 34 St.Rep. 1130; Fassio v. Montana Physicians' Service, (1976), ____ Mont. ____, 553 P.2d 998, 33 St.Rep. 457; Mountain West Farm Bur. v. Neal, (1976), 169 Mont. 317, 547 P.2d 79.

There are logical reasons for this rule of policy construction. In ordinary contract law, the language is construed most strongly against the party who drafted the contract, because it is his language which created the ambiguity or uncertainty of meaning. Section 13-720, R.C.M. 1947; Scinski v. Great Northern Life Ins. Co., (1940), 110 Mont. 106, 111, 99 P.2d 218. Additionally, an insurance policy is an adhesion contract. Equal bargaining strength between the insured and the insurer concerning the terms of the policy simply does not exist; the insurer drafts the

language of the policy and offers it to the insured on a take-it-or-leave-it basis; the insured has no voice in its terms or language. Steven v. Fidelity and Casualty Co. of New York, (1962), 27 Cal.Rptr. 172, 377 P.2d 284, 292-93. Finally, the extent of coverage is capable of clear, lucid and unambiguous definition which the insurer, by accident or design, failed to express; here, for example, had Aetna intended to limit its coverage to automobiles neither owned in whole nor in part, it could clearly have so stated.

Accordingly, we construe the ambiguity against the insurer and in favor of the insured. We construe the basic automobile insuring agreement in Section A of the policy to mean that coverage is provided for an automobile not owned in part by the insured. As the automobile in question is one unit and part of that unit was owned by St. Louis, coverage is afforded Turner Valley here.

This construction is further strengthened by the policy application which is expressly made a part of the insurance contract. It provides that "hired automobiles" coverage, while "not anticipated" is "covered if any". An insurance policy is to be read as a whole and, if possible, the various parts are to be reconciled and given meaning and effect. Aleksich v. Mutual Benefit Health & Accident Assn., (1945), 118 Mont. 223, 164 P.2d 372. Since the tractor unit was clearly a "hired automobile", it was covered by the express terms of the policy. To hold otherwise would deny effect to this provision of the policy in our view.

The second and third policy defenses which Aetna asserts are based upon conditions required by Alberta law to be included in every insurance contract written in the province of Alberta, Canada. ALTA. REV. STAT., Ch. 187, §288. These

statutory conditions are attached as endorsements to Aetna's policy with Turner Valley. They provide in pertinent part:

"Prohibited Use by Others.

"(2) The insured shall not permit, suffer, allow or connive at the use of the automobile

"(a) by any person under the influence of intoxicating liquor or drugs to such an extent as to be for the time being incapable of the proper control of the automobile; or

" * * *

"(c) for any illicit or prohibited trade or transportation".

The Alberta Insurance Act, ALTA. REV. STAT., Ch. 187, §288, requires that policies issued thereunder include as a part of the policy provisions certain "statutory conditions". Plaintiff contends that these statutory conditions do not apply to a covered vehicle involved in an accident occurring outside of Alberta, Canada. She argues that the phrase "in these statutory conditions" indicates that these conditions are applicable only in Alberta.

We hold that this contention is untenable. These conditions by statute are deemed to be a part of every insurance contract written in Alberta. ALTA REV. STAT., Ch. 187, §288(1)(a). Additionally, they were specifically written into the "Endorsement" Section of this policy. No language in this policy limits their application solely to the province of Alberta, Canada. They therefore form a part of the contract for all purposes.

In its findings of fact and conclusions of law in Donna Fitzgerald's suit against Turner Valley, St. Louis, and Collicott, the Federal District Court found that at the time of the accident Collicott was drunk and that Collicott's drunkenness was sufficient to impair his driving capacity.

Fitzgerald v. Turner Valley Transport, Civ. No. 3213 (D. Mont. 1975). Aetna contends that under the statutory conditions in its policy with Turner Valley, this finding absolves Aetna from liability to Turner Valley and hence, to the plaintiff.

The statutory condition involved here, however, provides that the insured shall not "permit, suffer, allow or connive" at the use of an insured automobile by a person who is incapacitated because of liquor. Webster's defines "permit" to mean consent to or authorize; "suffer" to mean not to forbid or hinder; "allow" to mean approve or sanction; and "connive" to mean fail to take action against a known wrongdoing or misbehavior. Webster's Third International Dictionary (Unabridged, 1971). As used here we understand these terms to mean that the insured must first have knowledge that the user is engaged in a prohibited activity before he may "permit, suffer, allow or connive" at such use.

For Aetna to successfully assert this statutory condition, it must show that Turner Valley had knowledge that Collicott was operating the tractor-trailer unit while he was incapacitated because of drink. Aetna has shown no such knowledge by Turner Valley, and during oral argument has admitted that Turner Valley in fact had no knowledge of Collicott's drunkenness. This policy defense, therefore, fails.

The third policy defense involves the insured's use of the tractor-trailer unit in illicit or prohibited trade or transportation. The Federal Court found that neither Turner Valley, St. Louis nor Collicott had either a Montana Railroad Commission or an Interstate Commerce Commission permit to operate in Montana. Fitzgerald v. Turner Valley Transport, supra. Aetna contends that in the absence of such permits,

Turner Valley, St. Louis, and Collicott were engaged in "illicit or prohibited trade or transportation", and consequently, coverage under the policy was suspended.

Fitzgerald relies upon Travelers Mut. Casualty Co. v. Rector, (8th Cir. 1943), 138 F.2d 396, to conclude that Turner Valley's transportation into Montana without I.C.C. and Montana permits does not constitute "illicit or prohibited trade or transportation".

In Rector plaintiff's deceased was killed in an automobile-truck collision in Louisiana. Ford Brothers Van & Storage Company (Ford Co.), a motor carrier out of Omaha, Nebraska, owned and operated the truck. The plaintiff obtained judgment against Ford Co. for $10,000.00. When execution on the judgment was returned unsatisfied, she brought suit against Travelers Mutual Casualty Co., Ford Co.'s insurer.

Travelers defended the suit on two bases: (1) that under Travelers' territorial restrictions in Ford Co.'s policy, the truck was not covered while being operated in Louisiana; and (2) that at the time of the collision the truck was being operated in an "illicit trade or prohibited trade or transportation" because Ford Co. did not have an I.C.C. license to operate in Louisiana, thus excluding it from coverage under the terms of the policy.

The court in Rector resolved the first issue in favor of the plaintiff. As to whether Ford Co. was engaged in illicit or prohibited trade or transportation, the court held that that issue was not properly before the court. It did, however, say that if it had been properly presented, it did not feel that Ford Co.'s failure to have an I.C.C. permit to operate in Louisiana at the time of the accident was sufficient to find that Ford Co.'s operation of the

truck in Louisiana was "illicit or prohibited" within the meaning of the policy in suit.

We agree with the conclusion of the Rector court. The territorial provision of this policy specifically makes the policy applicable to the use or operation of covered automobiles within Canada or the United States. We hold that Turner Valley's failure to have an I.C.C. or Montana permit for transporting goods into and through Montana does not constitute "illicit or prohibited trade or transportation" within the meaning of this policy under such circumstances.

The only other remaining issue relates to Aetna's petition for a writ of supervisory control. Plaintiff's complaint in this cause stated three counts: Count I to recover the amount of the judgment awarded her in Federal District Court for the wrongful death of her husband; Count II for punitive damages, attorney fees and costs for Aetna's alleged malicious, oppressive and fraudulent misconduct and lack of good faith; and Count III for compensatory damages for mental distress allegedly caused plaintiff by Aetna's conduct.

On November 18, 1975, Aetna moved to strike the second and third counts of plaintiff's complaint. On July 12, 1976, the District Court denied Aetna's motion to strike. Aetna now seeks review of the District Court's denial by means of a petition for a writ of supervisory control.

An order denying a motion to strike is not an appealable order. Rule 1, M.R.App.Civ.P. Such an order is interlocutory in character. It is reviewable on appeal from a final judgment. Rule 2, M.R.App.Civ.P. To permit review of such an order prior to final judgment through the device of supervisory control or other extraordinary writ is to accomplish indirectly that which cannot be done directly.

See State ex rel. Kosena v. District Court, (1977), ____

Mont. ____, 560 P.2d 522, 34 St.Rep. 87. Accordingly, we

decline to review the District Court's denial of defendant's

motion to strike at this time as the issue is not properly

before us.

The District Court's order denying defendant summary

judgment and granting plaintiff partial summary judgment is

affirmed. Defendant's petition for a writ of supervisory

control is denied.

_____
Chief Justice

We Concur:

_____

_____

_____
Justices

Hon. Gordon R. Bennett, District
Judge, sitting with the Court.