IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 80-420

---

PATSY JEAN ANDERSON, as Personal
Representative of the Estate of
MARIE SANDERS, deceased,

      Plaintiff, Cross-Appellant,
      and Respondent,

v.

LEO B. BAKER,

      Defendant, Cross-Appellant,
      and Respondent.

**FILED**

MAR 24 1982

*Thomas J. Kearney*

CLERK OF SUPREME COURT
STATE OF MONTANA

O R D E R

---

PER CURIAM:

Patsy Jean Anderson, as personal representative of the estate of Marie Sanders, deceased, the plaintiff, cross-appellant and respondent, has filed herein a petition for rehearing. Leo B. Baker, defendant, cross-appellant, and respondent has filed objections thereto. The Court has examined and considered the same.

IT IS ORDERED:

1. The final paragraph of the majority opinion appearing on page 280 of 39 State Reporter, is stricken and the following paragraph substituted therefor:

> "Reversed and remanded to the District Court for entry of judgment for plaintiff and cross-appellant Anderson in the principal sum of $26,182.35 plus accrued interest on the two certificates of deposit and savings account from July 30, 1978 to November 30, 1978, to be calculated by the District Court, together with interest at the statutory rate on the foregoing total sum from November 30, 1978 to date of judgment, and costs."

2. As so modified, the petition for rehearing is

-1-

denied.

3. The Clerk is directed to mail a true copy of this order to counsel of record for the respective parties and to the Clerk of the District Court of the Thirteenth Judicial District of the State of Montana, in and for the County of Yellowstone.

DATED this 18th day of March, 1982.

_____
Chief Justice

_____

_____

_____
Justices

Mr. Justice John C. Sheehy and Mr. Justice Frank B. Morrison, Jr., do not join in this order.

No. 80-420

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

PATSY JEAN ANDERSON, as Personal Representative
of the Estate of Marie Sanders, Deceased,

Plaintiff, Cross-Appellant and Respondent,

-vs-

LEO B. BAKER,

Defendant, Cross-Appellant and Respondent.

Appeal from: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone, The Honorable
William J. Speare, Judge presiding.

Counsel of Record:

For Plaintiff, Cross-Appellant and Respondent:

Holmstrom, Dunaway & West, Billings, Montana
Vicki Dunaway argued, Billings, Montana

For Defendant, Cross-Appellant and Respondent:

Hauf and Forsythe, Billings, Montana
John Hauf argued, Billings, Montana

Submitted: November 30, 1981

Decided:FEB 11 1982

Filed:FEB 11 1982

*Thomas J. Kearney*
Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

This is an appeal and cross-appeal from a summary judgment in a claim and delivery action. The District Court of Yellowstone County awarded each party one-half of the monies in a savings account and two certificates of deposit in a savings and loan association. We reverse.

The uncontradicted facts disclose that Marie Sanders, who lived on a farm near Ballantine, Montana, opened a savings account and two certificates of deposit in 1972 and 1974 at Security Federal Savings and Loan in Billings, Montana. On October 28, 1975, the name of her son, Leo B. Baker, who was buying the farm from Sanders, was added as a joint tenant to the three accounts which, by July 30, 1978, (through various deposits and interest accumulation) had come to total $26,182.35.

The signature cards for the three accounts, signed by Baker and Sanders contained the following language:

> " . . . It is agreed by the signatory parties with each other and by the parties with the Association that any funds placed in or added to the account by any one of the parties is and shall be conclusively intended to be a gift and delivery at that time of such funds to the signatory party or parties to the extent of his or their pro rata interest in the account."

The facts indicate that Mrs. Sanders did not intend to gift any portion of the savings accounts to Baker and that his name was placed on the account so he could withdraw money for her expenses, if needed. Also, a bank officer's affidavit indicated that in 1978, three years after Baker's name had been placed on the accounts, Baker told the officer that the funds in the accounts belonged to his mother and were not his money.

In 1975, Mrs. Sanders gave the passbook and certificates to Baker. In May, 1978, Mrs. Sanders was hospitalized for about a week in Billings, Montana, at which time her granddaughter, Patsy Jean Anderson, came from Arizona to visit her. In early June, after Mrs. Sanders had been released from the hospital she

went to Arizona to see her granddaughter.

On June 29, 1978, Mrs. Sanders executed her will, giving the bulk of her estate to Anderson (except for a few cash bequests) and named Anderson as her personal representative. On July 7, Sanders, through her attorney in Billings, made a written demand on Baker for the return of the passbook and certificates so she could withdraw the money. Baker refused and on August 3, 1978, Sanders filed the instant suit for their return.

Thus Marie Sanders commenced this action on August 3, 1978, alleging that her son, Leo Baker, was wrongfully retaining the two certificates of deposit and passbook. She asked for their return and that Baker's name be removed therefrom. In the alternative, she asked for the total sum of $26,182.35 in damages, if the certificates of deposit and passbook were not returned.

Baker filed an answer on October 20, asserting that he had the right to retain the certificates of deposit and passbook and further alleging that Sanders was incompetent and acting under coercion and undue influence. On November 18, 1978, Mrs. Sanders died in Arizona and on November 30, Baker withdrew all the money from the three accounts.

After Sanders' death the personal representative, Patsy Jean Anderson, was substituted as plaintiff. On March 5, 1979, the defendant filed an amended answer, raising the additional defenses of statute of limitations, laches and equitable estoppel. After a substitution of counsel for defendant, both sides moved for summary judgment, each seeking the total amount on deposit.

On July 10, 1980, the District Court entered judgment granting each of the parties one-half of the total funds on deposit. Baker now appeals, contending he is entitled to all of the accounts as the surviving joint tenant. Anderson cross-appeals, claiming that she, as residuary legatee of Sanders, is entitled to the full balance.

The issues on appeal can be stated as follows:

1. Is parol evidence admissible to show the funds were not intended as a gift by Sanders to Baker?

2. Is Sanders' suit barred by the applicable statute of limitations, laches, or equitable estoppel?

3. Is the plaintiff entitled to interest calculated from the date Baker withdrew all funds from the three bank accounts?

We reverse the trial court and find that the plaintiff personal representative should have been granted summary judgment in her claim and delivery action.

With regard to the first issue, Baker argues that State Board of Equalization v. Cole (1968), 122 Mont. 9, 195 P.2d 989, and Casagranda v. Donahue (1978), 178 Mont. 479, 585 P.2d 1286, are controlling. In Cole, the decedent created five joint bank accounts between herself and various relatives, all within three years of her death. After the decedent's death, the trial court imposed an inheritance tax measured by one-half of the value of the accounts. The questions presented on appeal included whether the state was entitled to an inheritance tax on the full amount of the joint bank accounts, or just one-half of the accounts. The court, in finding that the half-interest in the bank account which the joint tenants received was taxable as a transfer in contemplation of death, made the following statements:

> "Of course if the transfer by the donor to the joint account be regarded as a gift it has to satisfy all the requirements of a valid gift inter vivos. The essential requisites of a gift inter vivos are delivery, accompanying intent, and acceptance by the donee. (Citing cases.)

> "The first question is the intention of the parties making the deposit. (5 Michie, Banks & Banking, p. 101, sec. 46.) Such intention was discussed in Hill v. Badeljy, 107 Cal.App. 598, 605, 290 P. 637, 640, where the court declared, 'The question involved in cases of this character is the intention of the parties making the deposit, and where such intention is evidenced by a written agreement, as was done in the case at bar, this question of intention ceases to be an issue, and the courts are bound by the written agreement.' The above quotation

- 4 -

was cited and approved by this court in Ludwig v. Montana Bank & Trust Co., 109 Mont. 477, 502, 98 P.2d 377, 379.

"The Montana court also said, quoting from 9 C.J.S., Banks & Banking, sec. 286, 'Where no other evidence of intent is available, the form of the deposit may control; but when such intent is evidenced by a written agreement, the question of intention ceases to be an issue and the courts are bound by the agreement.' Ludwig v. Montana Bank & Trust Co., supra, at page 502 of 109 Mont., at page 389 of 98 P.2d.

"In this jurisdiction the signing of the signature card containing an agreement that the deposit was payable to either of the co-depositors or the survivor settled the question of the donative intent of the donor to make a gift in joint tenancy. See In re Sullivan's Estate, 112 Mont. 519, 118 P.2d 383." 122 Mont. at 14-15, 195 P.2d at 992.

In Casagranda, supra, the decedent placed funds in two savings accounts, naming himself and the defendant as joint tenants with the right of survivorship. After his death, the executrix brought suit to quiet title in the accounts and the court awarded the money to the defendant, as the surviving joint tenant.

The court elaborated on the Cole holding with the following language:

"Cole stood for the proposition that, in Montana, signing a signature card containing an agreement that the deposit is payable to either of the co-depositors or the survivor settles the question of donative intent to make a joint tenancy. Appellant cites an Arizona decision, O'Hair v. O'Hair (1973), 109 Ariz. 236, 508 P.2d 66, wherein it was held that the mere form of a bank account is not regarded as sufficient to establish the intent of the depositor to give another a joint interest in or ownership of it. We find the Montana rule represents a more reliable manner for determining questions concerning the ownership of joint bank accounts. This should not be mistakenly understood to mean we have no concern for the depositor's intentions. Intention is clearly expressed on the face of the signature card. Additional evidence is unnecessary. . ." 178 Mont. at 483-484, 585 P.2d at 1288.

However, we distinguish the instant case from Cole and Casagranda for the following reason. In neither Cole nor Casagranda was there any attempt made during the lifetime of the

- 5 -

donor-depositor, as there was here, to divest the other joint tenant of his or her interest in the account. In spite of the conclusory gift language contained on the signature card signed by Baker and Sanders, the uncontroverted evidence here shows that no gift was intended, i.e., Baker was named as a joint tenant for convenience purposes only. The legal effect of Sanders' claim and delivery action, filed during her lifetime, was to establish judicially her exclusive ownership to the funds in the account cutting off Baker's right of survivorship and to allow Baker to take, solely on the basis of the language contained on the signature card, would result in a substantial miscarriage of justice.

We therefore hold that where, as here, a depositor during his or her lifetime raises the issue of ownership of funds in a joint tenancy account, the statements on the signature card are not conclusive and additional evidence may be examined to ascertain the true intent of the parties. We are especially cognizant of the fact that many elderly people, whose means of transportation is limited or whose physical condition is deteriorating, execute the signature card in conjunction with a younger relative so the younger person may make withdrawals at the other's direction.

We are also mindful that the signature cards are forms containing language drafted by the depository institution. While the language thereon may very well describe the agreements between the depositor and the depository, it can hardly be expected to accurately express the intentions and relationships between the joint tenants about which the depository typically has little, if any, knowledge. Where the donor-depositor, as in the instant suit, indicates during her lifetime that her intent is other than that revealed on the signature card, we hold such evidence admissible.

Other courts have stated this same thought in a similar manner. For example, in Harrington v. Emmerman (D.C. Cir.

- 6 -

1950), 186 F.2d 757, which involved two female joint tenants, it was said:

> "To be sure, the deposit agreement described the two women as 'joint owners' and provided that either might draw on the account; but the agreement was on a printed form supplied by the building association, presumably for its own purpose and protection. Some such form probably would have been required by it to safeguard its own interests even had Miss Emmerman then stated the arrangement was merely for the convenience of Mrs. Carlin. The writing was conclusive as between the two women on the one hand and the building association on the other, but was not conclusive between the individuals as to whether a present gift had been intended." 186 F.2d at 761.

The Washington Supreme Court stated it thus:

> " . . . [T]he signature card is invariably in a form provided by the depository institution which has undoubtedly drafted it to protect the institution rather than express the terms of an agreement between the depositors." In re Guardianship of Matt (1969), 75 Wash.2d 123, ____, 449 P.2d 413, 418.

When a depositor opens a savings account at an institution he must accept the forms drafted by the depository and proferred him to sign or go elsewhere. We have held in other "take-it-or-leave-it" situations, where adheison contracts are involved, that the terms are to be construed against the drafter and any ambiguities are to be resolved in favor of the party having no voice in arriving at the document's terms, Fitzgerald v. Aetna Ins. Co. (1978), 176 Mont. 186, 577 P.2d 370. We feel this reasoning also supports our conclusion that the language of the signature cards signed by Baker and Sanders should not be the "only word" on what their actual relationship was intended by them to be.

Further, the parol evidence rule in Montana is not an obstacle for the introduction of evidence other than simply the signature card language. Section 28-2-905, MCA, provides in pertinent part:

> "When extrinsic evidence concerning a written agreement may be considered. (1) Whenever the terms of an agreement have been reduced to writing by the parties, it is to be considered

- 7 -

as containing all those terms. Therefore, there can be between the parties and their representatives or successors in interest no evidence of the terms of the agreement other than the contents of the writing except in the following cases:

" . . .

"(2) This section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as described in 1-4-102, or other evidence to explain an extrinsic ambiguity or to establish illegality or fraud." (Emphasis added.)

Section 1-4-102, MCA, in turn provides:

"Consideration of circumstances surrounding execution. For the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument and of the parties to it, may also be shown so that the judge be placed in the position of those whose language he is to interpret."

The circumstances under which the signature cards were executed here shows that no gift was intended by Sanders to Baker when the cards were signed.

In a similar situation involving unambiguous lien waivers, parol evidence was held admissible to show the circumstances of the parties and their real purpose in executing and receiving the lien waivers. Fillbach v. Inland Construction Corp. (1978), 178 Mont. 374, 584 P.2d 1274. There a subcontractor signed a series of lien waiver forms in which he acknowledged receipt of specified sums of money in full payment for labor and materials furnished by him to a specified date and waived all rights to file mechanics liens against the premises. Nonetheless we held parol evidence admissible to show that the lien waivers were executed to enable the subcontractor to receive money from the owner from time to time and were not intended to constitute payment in full to the specified date as stated in the release.

Likewise in Kussler v. Burlington Northern Inc. (1980), ____ Mont.____, 606 P.2d 520, 37 St.Rep. 240, we adopted prospectively the rule from Restatement of Torts, Second, Sec. 885, and held

- 8 -

that in the future unless a general release form specifically states otherwise, parol evidence is admissible to show whether the parties intended to release other parties or whether the release was actually intended to constitute full compensation in the face of unambiguous language to that effect in the release form.

Other jurisdictions have similarly endorsed the use of parol evidence in joint bank account situations. In Matt, supra, the court found that the execution of the signature card raised a rebuttable presumption of joint tenancy and it would make little sense to refuse parol evidence to rebut the presumption. In Murray v. Gadsden (D.C.Cir. 1952), 197 F.2d 194, 33 ALR2d 554, the court examined the parol evidence rule exception, which allows an inquiry into the object of the parties in executing the instrument, and admitted the parol evidence. See Annot., Parol Evidence Rule As Applied to Deposit of Funds in Name of Depositor and Another (1954), 33 ALR2d 569.

The case of Harrington, supra, is similar to the case at bar. In Harrington, the donor-depositor continued to treat the joint account as her own during her lifetime and, subsequent to the creation of the account, her representative filed suit because the other joint tenant would not surrender the passbook. After an answer had been filed, but before any further action was taken, the depositor died.

The Harrington court found that the filing of the suit by the donor-depositor cut off any survivorship rights of the other joint tenant and whatever interest the depositor had passed to her executor. The case was then remanded for the survivor to try to prove that the decedent intended a gift of at least part of the account to the survivor. In the case at bar, however, there is uncontradicted evidence apart from the signature card that Sanders never intended a gift of any part of the accounts to Baker, that Baker was named as a joint tenant for convenience purposes only, and that Baker understood this. See also Brennan

v. Timmins (1963), 104 N.H. 384, 187 A.2d 793 and Brennen v. Timmins (1964), 105 N.H. 464, 202 A.2d 229.

In two cases wherein courts have construed language almost identical to that at issue here, additional evidence was allowed. In Graves v. Graves (1963), 42 Ill.App.2d 438, 192 N.E.2d 616, the court examined evidence other than merely the words in the agreement, finding that the record, in addition to the agreements, showed that a gift was intended. In Estate of Macak (1973), 14 Ill.App.3d 261, 302 N.E.2d 436, the court similarly looked at the evidence on the record, finding no evidence to rebut the presumption in favor of the surviving joint tenant. It should be noted that in both Graves and Macak there was evidence that the donor-depositor intended a gift to the other joint tenant. In this case at bar, however, the evidence is exactly to the contrary. See Annot., Creation of Joint Savings Account or Savings Certificate as Gift to Survivor (1972), 43 ALR3d 971, 1018.

With regard to the second issue, Sanders' action is not barred by the two-year statute of limitations, section 27-2-207, MCA. This statute does not begin to run until after there has been a demand and refusal of delivery. Interstate Manufacturing Co. v. Interstate Products Co. (1965), 146 Mont. 449, 408 P.2d 478. Here, the statute began to run at the time Sanders made written demand on Baker for the return of the passbook and certificates, i.e. July 7, 1978, and Sanders filed her suit less than one month later, well within the required time.

The doctrine of laches has no application to the present case. Laches requires negligence in the assertion of a claim and exists when there has been an unexplained delay of such duration as to render the enforcement of the right inequitable. Brabender v. Kit Manufacturing Co. (1977), 174 Mont. 63, 67-68, 568 P.2d 547, 549. There is no evidence here that Mrs. Sanders was negligent in prosecuting her claim. As stated above, she

waited less than a month after her written demand was refused before filing suit.

Similarly, equitable estoppel does not apply here. This principle requires that the party claiming it relied on a representation or promise to his detriment, Carroccia v. Todd (1980), ___ Mont. ___, 615 P.2d 225, 37 St.Rep. 1437. Baker has not shown any reliance to his prejudice, and thus cannot have a legitimate defense based on equitable estoppel.

With regard to the third issue, the trial court correctly calculated interest from the date that the three accounts were closed by Leo Baker and the proceeds converted to his own use, which was November 30, 1978. The applicable statute is section 27-1-320, MCA, which provides in pertinent part:

> "Conversion of personal property. (1) The detriment caused by the wrongful conversion of personal property is presumed to be:
>
> "(a) the value of the property at the time of its conversion with the interest from that time. . ."

Accord, Galbreath v. Armstrong (1948), 121 Mont. 387, 193 P.2d 630.

Reversed and remanded to the District Court for entry of judgment for plaintiff and cross-appellant Anderson for the sum of $26,182.35, interest thereon at the statutory rate from November 30, 1978 to date of judgment, and costs.

_____
Chief Justice

We concur:

_____

_____

_____

_____

- 11 -

---------------------------------

---------------------------------
Justices

Mr. Justice John C. Sheehy, dissenting:

I would affirm the decision of the District Court, which gave one-half of the joint deposits to each of the contending parties.

I will first summarize my reasons for dissenting to the majority opinion, and then I will support my summary by a more extended discussion of the applicable law.

Marie Sanders, by executing the unique depository instruments through a savings institution made a gift to her son, Leo B. Baker, of one-half of the funds deposited. By law, she could not revoke that gift. In addition, by the terms of the same depository instruments, she created a joint tenancy in the remainder of the funds, giving Leo B. Baker a right of survivorship to all of the deposit if she predeceased him.

By the creation of the joint tenancy, Marie Sanders gave Leo B. Baker the power to acquire dominion over the entire account by withdrawing the same. Leo B. Baker could have acquired the whole account by withdrawal, or by surviving Marie Sanders while the joint tenancy was in full force and effect.

The legal result of the depository instruments was that Baker owned one-half of the deposited funds by gift, and further interest as a joint tenant with right of survivorship in the other half of the deposits.

This joint tenancy, like any other, depended upon the coexistence of the four unities of a joint tenancy: title, interest, time, and possession. A joint tenant's right of survivorship is not irrevocably fixed upon the creation of the estate. The survivorship right becomes fixed only if the joint tenant survives, and then only if the four unities of the joint tenancy estate have continued to exist to the moment of survival.

Before the death of any joint tenant, any action by one joint tenant which serves to sever or terminate the joint tenancy destroys the right of survivorship. Examples are: a voluntary conveyance by one party of his joint interest; a partition proceedings; or, as in this case, the demand or action by Marie Sanders to terminate the title in joint tenancy.

When a joint tenancy is severed, the parties hold the property as tenants in common. (A joint tenancy is distinguished from a tenancy by the entirety by the fact that a tenancy by the entirety requires a fifth unity, that of person. Husbands and wives only can hold as tenants by the entirety.) Here, Marie Sanders terminated the right of survivorship as to the funds rightfully belonging to her. One-half of the funds, belonging to her as a part of her estate, are subject to distribution by her will.

Thus, Baker is entitled to one-half of the deposited funds by gift. He would be entitled to one-half of the remaining half of the joint tenancy funds had severance of the joint tenancy occurred since he would then be a tenant in common. But because the joint tenancy was terminated, not severed, during the lifetime of Marie Sanders, he is not entitled to any of the remaining half of the funds unless he participates as an heir in the distribution of Marie's estate.

The statute of limitations applies against the action of Marie to set aside the gift to Leo Baker. The statute did not run against her right to terminate the survivorship in the joint tenancy, since in this case all the funds were hers and she could terminate the right of survivorship at any time during her lifetime.

That is my summary.   Following are my reasons:

Marie Sanders made a gift at the time that she executed

the signature documents with the savings and loan association.

The instrument provides in significant part as follows:

> "It is agreed by the signatory parties with
> each other and by the parties with the
> Association that any funds placed in . . .
> the account . . . shall be conclusively intended
> to be a gift and delivery at that time of such
> funds to the signatory party or parties to the
> extent of his or their pro rata interest in the
> account . . ."

A gift is a transfer of personal property made voluntarily

and without consideration.   Section 70-3-101, MCA.   A gift,

other than a gift in view of death, cannot be revoked by the

giver.   Section 70-3-103, MCA.

The language in the depository agreement above goes

much further than is necessary to establish a joint tenancy

with right of survivorship.   Section 70-1-307, MCA, defines

a joint interest as "one owned by several persons in equal

shares by a title created by a single will or transfer, when

expressly declared in the will or transfer to be a joint

tenancy . . ." All that the law requires in a signature

agreement establishing a joint tenancy bank account or

deposit is an express declaration that the monies are held

in joint tenancy.   No more is required under section 70-1-307,

MCA.

I distinguish this depository agreement from what is

normally or usually required in the establishment of a joint

tenancy account.   A sample of sufficient language is found

in Nichols, 2 Cyclopedia of Legal Forms, § 2.1422 (1978):

> "The account listed on reverse side of this
> signature card is a joint and several account.
> All funds now or hereafter deposited in account
> by either or any of depositors shall be the
> property of depositors jointly with right of
> survivorship.   Each depositor shall have complete

- 15 -

and absolute authority over account during joint lives of depositors and may withdraw any part of such funds on checks or other withdrawal orders signed by either or any of depositors and by survivor or survivors in case of death of any thereof."

A comparison of the form set out in Nichols and that used by the savings and loan association in the case at bar demonstrates a vast difference: Nichols' form establishes a joint tenancy account; in the case at bar, the form established an absolute gift of one-half of the deposit in this case in addition to creating a joint tenancy. As a matter of legal effect, it is only when one of the joint tenants deposits a disproportionate amount in the account that the signature card here comes into play. If each of two joint tenants contributed equally to a joint tenancy account, the signature card would have no gift application.

In State Board of Equalization v. Cole (1948), 122 Mont. 9, 16, 195 P.2d 989, 993, we held that, for inheritance tax purposes, the _mere_ creation of a joint tenancy account constituted a gift to a joint tenant of one-half of the deposit, even though the donor retained the right to exercise control over the deposited funds. The contention was made there that no gift occurred because the donor had not completely divested herself of the title transferred to the donee. This Court held that the creation of the joint tenancy was a completed gift transferring an interest in the deposit to the donee. The form of the depository or signature agreement is not set forth in _Cole_. The discussion of the court is in general terms with respect to the creation of a joint tenancy. Based on _Cole_, however, and buttressed by the additional language in the signature agreement which is before us in the case at bar, there can be no doubt that the legal effect of the deposit by Marie Sanders was to make a completed gift of one-half of the deposit to Leo B. Baker. We said:

- 16 -

"If the intent was to confer upon the defendant a present right to draw upon the fund, either without limitation or for and to the extent of described purposes, the transfer was valid, notwithstanding the donor retained a right to draw upon the fund at will. She thereby completely divested herself of the title transferred to the defendant. It did not take effect upon her death, and was not enlarged by that event. Such title as the defendant had vested at the time of the entries upon the books. It was a present right and presently enjoyable." Cole, supra, 122 Mont. at 17, 195 P.2d at 993.

As to the intent of Marie Sanders, we have no indication in this record that she intended any other thing but the gift and the joint tenancy interest that the signature form created. In Casagranda v. Donahue (1978), 178 Mont. 479, 483-484, 585 P.2d 1286, 1288, we said:

"Cole stood for the proposition that, in Montana, signing a signature card containing an agreement that the deposit is payable to either of the co-depositors or the survivor settles the question of donative intent to make a joint tenancy. Appellant cites an Arizona decision, O'Hair v. O'Hair (1973), 109 Ariz. 236, 508 P.2d 66, wherein it was held that the mere form of a bank account is not regarded as sufficient to establish the intent of the depositor to give another a joint interest in or ownership of it. We find the Montana rule represents a more reliable manner for determining questions concerning the ownership of joint bank accounts. This should not be mistakenly understood to mean we have no concern for the depositor's intentions. Intention is clearly expressed on the face of the signature card. Additional evidence is unnecessary."

In Casagranda, supra, we set out the form of the signature card used by that institution. 178 Mont. at 484, 585 P.2d at 1288-1289. It merely established a joint tenancy, and had no language in it respecting the conclusive gift of one-half of the deposit.

It is inescapable, therefore, that as to one-half of the deposit made by Marie Sanders, under the signature cards which she executed at the time, she made a conclusive gift of one-half of the deposit to her son, Leo B. Baker. She cannot revoke that gift. Section 70-3-103, MCA.

- 17 -

The legal effect as to the balance of the deposit made by Marie Sanders, above the one-half gifted, was that it was deposited subject to a joint tenancy with right of survivorship between herself and Leo Baker. By the signature card, she gave Baker the power to acquire dominion over the entire account by withdrawing the same. He could have also acquired right to the entire account if she had predeceased him because then the whole of the joint tenancy property would have vested in him as of the moment of her death.

In order to determine what should become of the one-half of the deposited funds under the facts of this case, we should examine the inherent qualities of a joint tenancy. We have referred above to section 70-1-307, MCA, which states that a joint interest is one owned by several persons in equal shares. Our court has said that the effect of that statute is to include all of the incidents of a joint tenancy estate under common law. Hennigh v. Hennigh (1957), 131 Mont. 372, 377, 309 P.2d 1022, 1025.

The cases reflect two divergent views as to the effect of the ownership interest of a joint tenant. One view holds that for the duration of the joint tenancy, each party owns the undivided whole of the property, and not a fractional part thereof. See Merrick v. Peterson (1980), 25 Wash.App. 248, 606 P.2d 700, 706. The better view in Montana, in view of the language of section 70-1-307, MCA, is that each joint tenant owns an undivided equal share of the joint tenancy estate, with a right to survive to the whole of the joint tenancy property if he is the ultimate survivor. As was noted in In Re Estates of Carlson (1968), 201 Kan. 635, 443 P.2d 339, 347, a "joint tenancy" exists where a single estate in property, real or personal, is owned by two or

more persons, under one instrument or act of the parties;

the grand incident of joint tenancy is the right of survivorship,

by which the entire tenancy on decease of any joint tenant

remains to the survivors, and at length to the last survivor.

Joint bank accounts, however, present a problem because

either party can acquire dominion over the whole of the

property by simply withdrawing the funds. This was noted in

Cole, supra, 122 Mont. at 17-18, 195 P.2d at 993-994, where

this Court said:

> "The California court has declared that the
> identical California statute created the same
> estate known as joint tenancy or common law
> . . . While the joint bank account does differ
> from other types of joint tenancies it has not
> been treated differently from other joint ownership
> . . . For example either co-tenant of a joint tenancy
> in real property could sever the estate by conveying
> his interest to a third party and as between the
> remaining co-tenant and the transferee the new
> estate became a tenancy in common. The special
> feature distinguishing joint tenancy from other
> joint interests was the attribute of survivorship.
> So long as both co-tenants remained alive any
> transfer by one co-tenant only resulted in a transfer
> of half the property. But either joint owner of
> a joint bank account by virtue of the special contract
> with the bank can acquire dominion over the entire
> account by drawing a proper order on the bank. This
> feature is a special attribute of a joint bank account.
> Nevertheless a joint bank account is otherwise
> subject to the same rules as other joint tenancies
> . . ." (Emphasis added.)

Where, as here, the joint owners of a bank account have

not acted to withdraw the funds disproportionately, the

joint tenancy account is subject to the same rules as any

other joint tenancy.

The rules of joint tenancy include the common law

requirement that four unities are essential to an estate in

joint tenancy: unity of interest, unity of time, unity of

title, and unity of possession. Tenhet v. Boswell (1976), 133

Cal.Rptr. 10, 554 P.2d 330, 334. If an essential unity is

destroyed, the joint tenancy is severed and a tenancy in

common results. Tenhet, 331 P.2d at 334. Thus, in First Westside

Nat. Bank of Gr. Falls v. Llera (1978), 176 Mont. 481, 486, 580 P.2d 100, 103, we held that where one joint tenant in an automobile encumbered his interest in the automobile as security for a loan to the bank, and defaulted, the action of the bank in collecting its security through the automobile created a severance, with the result that the bank and the other joint tenant became the owners of the automobile as tenants in common. In other words, the unity of interest, an essential of a joint tenancy estate, had been destroyed.

A joint tenant can terminate the joint tenancy by any act which is inconsistent with its continued existence. Shackelton v. Sherrard (Okla. 1963), 385 P.2d 898, 902. Ordinarily the inconsistent act will result in a destruction of one of the four unities of a joint tenancy and a tenancy in common results. Here, however, Marie Sanders moved to end the joint tenancy because all of the funds which were in the joint tenancy portion of the deposit were hers. In other words, she moved to end the right of survivorship which was enjoyed at that time by Leo B. Baker. Her effort was more than a severance, it was a termination of the joint tenancy by a party having a right to terminate because she was the true owner of the funds. Baker by his action recognized the her right to do so in his statements to the savings and loan association officers, and in not appearing to contest her deposition in Arizona. The legal effect therefore was to terminate the one-half portion of the deposit that was subject to the joint tenancy rules.

As for the statute of limitations, it, of course, applies to the gift which was made by virtue of the execution of the signature agreements. Her gift could only be set

aside for fraud or mistake, or incapacity, none of which appear here. Even so, the limitation on those grounds is two years under section 27-2-203, MCA. The statute was not tolled by section 27-2-301, relating to the accrual of an action, until she made demand. Her right, if any, to demand to set aside the gift portion accrued immediately upon the execution of the signature forms and the statute of limitations ran from the moment of the execution of those instruments.

With respect to the joint tenancy portion of the deposit, however, the statute of limitations did not run or her action did not accrue until she made demand under section 27-2-301, MCA. Therefore, that portion of her claim is not outlawed.

The action of the majority in resorting to parole evidence to set aside a written instrument is a good example of why courts should be chary in allowing extrinsic evidence to overcome the legal effect of a writing. Assuming that parole evidence should be allowed here, it would present a question of fact as to intent. Yet the majority decides Marie Sander's intent as a matter of law, purportedly upon "uncontroverted" evidence. Marie Sanders' deposition, taken in Arizona in July 1978, is the only evidence available as to her ~~interest~~ _intent_. She seems to be saying that the signature cards were never signed by her:

> "Q. Have you ever authorized him to appear on the savings certificates as a joint tenant with you? A. No.
>
> "Q. If the bank signature cards for these savings certificates shows your signature on there, would it be your position that those signatures would be forgeries? A. I don't know. I'd have to see it, look into them first.
>
> "Q. Am I correct, though, that you have no knowledge whatsoever of making him your joint tenant? Let me ask the question again.

- 21 -

"Mrs. Sanders, am I correct that you have never authorized him to sign on those certificates? A. No, I have never.

"Q. Have you ever given Leo B. Baker your general power of attorney? A. No."

It is a better practice for appellate courts to leave the resolution of fact questions to the district courts. In my view of the case, however, it is not necessary to decide questions of fact at this level. The legal position of the parties is determined, as I have said, by the language of the signature cards, and by Marie Sander's action to terminate the joint tenancy.

For the foregoing reasons I would hold that, in this case, Leo B. Baker is entitled to summary judgment as to one-half of the deposited funds; Patsy Jean Anderson is entitled to the remaining one-half of the funds as the Personal Representative of the estate of Marie Sanders. Again, for those reasons, I would affirm the District Court.

_____
                    Justice

Mr. Justice Frank B. Morrison concurring:

I concur in the dissent.

_____
Justice

- 22 -