No. 83-357

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

_____

CYNTHIA FITZGERALD,

        Plaintiff and Respondent,

  -vs-

THE WESTERN FIRE INSURANCE CO.,

        Defendant and Appellant.

_____

APPEAL FROM:  District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable John M. McCarvel, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Garlington, Lohn & Robinson; Paul C. Meismer,
Missoula, Montana

    For Respondent:

        Marra, Wenz, Johnson & Hopkins; David A. Hopkins,
Great Falls, Montana

_____

Submitted on Briefs:  December 15, 1983

Decided:  April 16, 1984

Filed:    APR 16 1984

*Ethel M. Harrison*

_____
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Appellant raises this appeal from a summary judgment granted to the plaintiff. The Eighth Judicial District Court, Cascade County, found Western Fire Insurance Company liable to pay punitive damages on its automobile liability insurance coverage. We affirm.

Appellant issued an automobile insurance policy to John or Grace Dawson. On November 10, 1977, respondent suffered injuries as a result of an accident involving Michael Dawson, a permissive driver of the Dawson's insured vehicle. On July 13, 1981, a jury found Dawson guilty of negligently driving the automobile and thereby causing respondent's injuries. Trial testimony indicated Dawson, at the time of the accident, had consumed a considerable quantity of alcohol and was traveling at an extremely high rate of speed in the Missoula, Montana, city limits.

On these facts, the jury awarded respondent, in addition to the general and special damages, $5,000 in punitive damages. Appellant paid all of the damages awarded by the jury except the punitive damages. Respondent then brought this action to recover the punitive damages from appellant. Appellant answered, denying that its liability insurance coverage provided payment for punitive damages. Following a hearing, the court granted summary judgment for respondent.

Appellant presents two issues on appeal:

(1) Whether the insurance policy language precludes payment for punitive damages;

(2) whether public policy in the punitive damage statute precludes insurance coverage against punitive damages.

Appellant's first issue focuses on the language of the insurance policy issued to the Dawsons. The language reads:

> "The Western Fire Insurance Company . . . [a]grees . . . [t]o pay on behalf of the insured, all sums which the insured shall become legally obligated to pay as damages because of: a. bodily injury; b. property damage; arising out of the ownership, maintenance or use of the automobile."

Appellant contends this language permits payment of compensatory damages, either special or general, for bodily injury or property damage resulting from the use of the vehicle. However, appellant maintains that this language fails to provide coverage for punitive damages. We disagree.

Appellant's argument centers on making a clear distinction between compensatory damages and punitive damages. This distinction, it contends, comes from the origin and purpose of the damages. Compensatory damages result from actual losses resulting from bodily injuries or property damages. Punitive damages arise out of specific conduct deemed undesirable and thereby require punishment of the wrongdoer and make an example of him. Appellant contends, the contract language read in light of this distinction provides no coverage for punitive damages. We reject this argument.

The Oregon Supreme Court in Harrell v. Travelers Indemnity Co. (1977), 279 Or. 199, 567 P.2d 1013, interpreted insurance contract language very similar to the instant case and found coverage for punitive damages. It

concluded that the majority of courts held that such language required coverage for the insured. It reasoned that the language in the contract was ambiguous and thereby subject to interpretations against the insurance company:

> "[w]e hold that such provisions were ambiguous, at the least, so as to require the resolution of any reasonable doubts against the insurance company; that upon reading the policy provisions as set forth above, and in the absence of any express exclusion of liability for punitive damages, a person insured by such a policy would have reason to suppose that he would be protected against liability for punitive damages, a person insured by such a policy would have reason to suppose that he would be protected against liability for 'all sums' which the insured might become 'legally obligated to pay' and that the term 'damages' would include all damages including punitive damages which became, by judgment, a 'sum' that he became 'legally obligated to pay.'

> "Defendant insurance company could have removed this ambiguity easily by including an express exclusion from liability for punitive damages but apparently chose not to do so. . . 'there is nothing in the insuring clause that would forewarn an insured that such was to be the intent of the parties,' if indeed, such was the intent of the insurance company." 567 P.2d at 1015

In the instant case, appellant creates an ambiguity in the language by contending that we must read into the language the distinction between punitive and compensatory damages. Such ambiguity requires application of the often expressed rule: "[w]here an ambiguity in an insurance contract exists, every doubt should be resolved against insurer." Fitzgerald v. Aetna Insurance Co. (1978), 176 Mont. 186 at 191, 577 P.2d 370 at 372.

The second issue presented by appellant, whether public policy in the punitive damage statute precludes

insurance coverage against punitive damages, was addressed in First Bank (N.A.) Billings v. Transamerica Insurance Company (Mont. 1984), No 83-299, ____ P.2d ____, ____ St.Rep. ____. In that case, on certified questions from the United States District Court, we found "no expressed public policy by the legislature on the subject of insurance coverage for punitive damages" p. 6. We went on to hold that providing coverage of punitive damages is not contrary to public policy. Because this opinion deals in detail with the issues raised by appellant, we need not make any further comment.

We therefore hold that the language of the insurance contract provides for coverage of punitive damages and that no public policy in Montana precludes payment of these damages by an insurance carrier. We affirm the judgment of the District Court.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

Mr. Justice Daniel J. Shea dissenting:

I dissent. For years and years and years parties to insurance contracts have operated on the assumption that language such as that interpreted here does not cover a claim for punitive or exemplary damages. We should give some weight to that practice in interpreting the contract language, for surely damages to punish the insured defendant were not within the contemplation of the parties.

Damages are for punishment or to make an example of the defendant because of his conduct. While punitive damages as part of an insurance contract may not be contrary to public policy, I do not believe we should expand the interpretation of the contractual language to reach this result. Here the damages the insurance company agreed to pay were damages related to bodily injury or property damage. But the insurance company is here forced to pay additional damages because its insured was drunk and inflicted the bodily injury while he was drunk. The punitive damages are not to compensate for bodily injury or property damage but to punish the defendant. Clearly, they are not covered by the insurance contract.

<em>Daniel J Shea</em>
Justice