No. 85-459

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

LARRY W. PASSAGE; NEVA M. PAGGAGE,
individually and as custodian for
ALLISON PASSAGE and TOD PASSAGE,
minors; and TWILA PASSAGE,

        Plaintiffs and Respondents,

   -vs-

PRUDENTIAL-BACHE SECURITIES, INC.,
a Delaware corporation; G.T. MURRAY
COMPANY, a Montana corporation;
RICHARD DOBBINS; WILLIAM CROWLEY;
and G.T. MURRAY,

        Defendants and Appellants.

APPEAL FROM: District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Gordon Bennett, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Daniel J. Shea argued for Prudential-Bache, Helena,
Montana
Luxan & Murfitt; Michael J. Mulroney argued for G.T.
Murray, et al., Helena, Montana

    For Respondent:

        W. W. Leaphart argued, Helena, Montana

Submitted: June 17, 1986

Decided: August 26, 1986

Filed: AUG 26 1986

*Ethel M. Harrison*

Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

In this case, all parties appeal portions of an order of the District Court for Lewis and Clark County which held that claims on some of the Passages' accounts with defendants were subject to valid arbitration clauses. We affirm in part and reverse in part.

The issues are:

1. Did the District Court correctly determine that it had jurisdiction to order arbitration of the Passages' claims under the Federal Arbitration Act?

2. Are the arbitration agreements in this case adhesion contracts, and if so, are they unenforceable?

3. Did the District Court err in directing that arbitration be conducted under the rules of the American Arbitration Association as elected by the Passages?

4. Which parties are entitled to benefit of the arbitration agreement?

5 Did the District Court properly stay the claims of the children pending arbitration of their parents' claims?

Prudential-Bache Securities, Inc. (Prudential) is the New York correspondent of G. T. Murray Company. The other three defendants are or were officers or employees of G. T. Murray Company. Beginning in 1983, the Passages opened several accounts at the G. T. Murray office in Helena, Montana. The accounts included two "target accounts" and two regular accounts, with total deposits of $429,403.30. Neva Passage also opened accounts for each of their two children with total deposits valued at $13,440.97. Larry Passage opened an account for Twila Passage, his mother, with total deposits valued at $27,187.51. When they opened their

2

regular and target accounts, Larry and Neva Passage signed customer agreement forms, a copy of which is appended to this opinion. Twila Passage also signed a customer agreement form. The customer agreement forms included arbitration clauses providing as follows:

> Any controversy arising out of or relating to my account, to transactions with or for me or to this Agreement or the breach thereof, . . . shall be settled by arbitration in accordance with the rules then obtaining of either the American Arbitration Association or the Board of Governors of the New York Stock Exchange as I may elect. If I do not make such election by registered mail addressed to you at your main office within five (5) days after demand by you that I make such election, then you may make such election.

In February 1985, the Passages filed suit in the District Court for Lewis and Clark County, charging defendants with various violations of state securities laws and duties in handling their accounts. The complaint alleged losses in the regular and target accounts of $320,104.82, losses in the children's accounts of $4,770, and loss in the Twila Passage account of $10,210.15. Defendants filed demands for arbitration. The District Court found that the accounts, except for the children's accounts, were subject to valid arbitration clauses and granted the motion of defendant Prudential to compel arbitration. It denied the motion of defendants G. T. Murray Company, Richard C. Dobbins, William Crowley, and G. T. Murray (the Murray defendants) to compel arbitration. It held that there was a question of whether the Murray defendants had standing to demand arbitration, but stated that this was immaterial since Prudential undisputedly had the necessary standing. The court also held that the client agreements containing the arbitration clauses did not apply to the accounts opened in the names of the Passage children,

3

but it stayed judicial proceedings on the children's claims until arbitration is completed on the other claims. Each of the parties has appealed on portions of the judgment which are unfavorable to it.

I

Did the District Court correctly determine that it had jurisdiction to order arbitration of the Passages' claims under the Federal Arbitration Act?

This area of the law is undergoing rapid and comprehensive change as a result of recent U.S. Supreme Court decisions. That Court's decision in Southland Corp. v. Keating (1984), 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1, conclusively answers this question. In that case, Southland Corporation, the owner and franchisor of 7-Eleven convenience stores, was charged by 7-Eleven franchisees with fraud, oral misrepresentation, breach of contract, breach of fiduciary duty, and violation of state disclosure requirements in its franchise agreements. Southland Corporation appealed the decision of the California Court of Appeals that arbitration clauses in Southland's contracts with its franchisees were rendered void by California's Franchise Investment Law, which required judicial consideration of claims brought under it. The Supreme Court reversed. It held that, as interpreted, the California Franchise Investment Law conflicted with the Federal Arbitration Act and violated the Supremacy Clause. The Court reasoned:

> In enacting § 2 of the federal Act, Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration . . .

4

Congress has thus mandated the enforcement of arbitration agreements.

Southland, 465 U.S. at 10. In answer to the argument that claims brought in state court are not subject to the Arbitration Act, the Court stated:

> . . . it is clear beyond question that if this suit had been brought as a diversity action in a federal district court, the arbitration clause would have been enforceable. [citation omitted.] The interpretation given to the Arbitration Act by the California Supreme Court would therefore encourage and reward forum shopping. We are unwilling to attribute to Congress the intent, in drawing on the comprehensive powers of the Commerce Clause, to create a right to enforce an arbitration contract and yet make the right dependent for its enforcement on the particular forum in which it is asserted. And since the overwhelming proportion of all civil litigation in this country is in the state courts, we cannot believe Congress intended to limit the Arbitration Act to disputes subject only to _federal_-court jurisdiction. Such an interpretation would frustrate congressional intent to place "[a]n arbitration agreement . . . upon the same footing as other contracts, where it belongs." H.R. Rep. No. 96, 68th Cong., 1st Sess., 1 (1924).
>
> In creating a substantive rule applicable in state as well as federal courts, Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements.

Southland, 465 U.S. at 15-16. Under Southland, a state court clearly has jurisdiction to order arbitration under the Federal Arbitration Act.

We affirm the District Court as to this issue.

II

Are the arbitration agreements in this case adhesion contracts, and if so, are they unenforceable?

The customer agreement forms signed by the Passages are one-page documents, but they contain a number of complex and technical agreements and promises on the parts of both parties. The arbitration clause, paragraph 14, is printed in the same typeface as the rest of the form. It is one of the

longer provisions in the agreement. The Passages invested a significant amount of money with defendants, and there has been no suggestion that they require protection because they are in any way improvident persons.

The Southland opinion does not mandate that all arbitration clauses are enforceable:

> We discern only two limitations on the enforceability of arbitration provisions governed by the Federal Arbitration Act: they must be part of a written maritime contract or a contract "evidencing a transaction involving commerce" and such clauses may be revoked upon "grounds as exist at law or in equity for the revocation of any contract."

Southland, 465 U.S. at 10-11. The agreement between the Passages and Prudential clearly involves interstate commerce, since its object was purchase and sale of securities through a public stock exchange.

The Passages contend that the agreement should be declared unenforceable upon "grounds as exist at law or in equity for the revocation of any contract." The Passages argue that this clause is revocable because it appears in a contract of adhesion. They have cited post-Southland cases in which state courts have declared void arbitration clauses in contracts of adhesion. However, the factual and legal situations in those cases were different from the one here. In Victoria v. Superior Court (Cal. 1985), 710 P.2d 833 (patient was sexually assaulted by an orderly), the holding that the arbitration clause would be set aside was based on the court's determinations that the scope of the arbitration clause was unclear, its ambiguity should be interpreted against the hospital-drafter, and it was unlikely that the parties intended the arbitration clause to apply in these circumstances. In Obstetrics and Gynecologists v. Pepper

6

(Nev. 1985), 693 P.2d 1259 (gynecology clinic patient suffered cerebral incident while on oral contraceptives), the appellate court upheld the district court's setting aside of an arbitration clause. The appellate court stated the district court had not made findings and conclusions but reasoned that the district court could have found the agreement was an adhesion contract and was not knowingly entered.

The Passages also argue that this Court's opinions in Anderson v. Baker (1982), 196 Mont. 494, 641 P.2d 1035 (adhesion contracts construed against the drafter), and Transamerica Ins. Co. v. Royle (1983), 202 Mont. 173, 656 P.2d 820 (insurance policy clause examined using consumer approach), should be extended so that the enforceability of this arbitration clause would be examined from a consumer approach. They contend that under the consumer approach the provision for arbitration should be stricken, since it was not clearly established that the Passages were put on notice of the arbitration clauses.

In contrast, the federal courts have held arbitration clauses in brokerage agreements enforceable:

> Contracts of adhesion arise when a standardized form of agreement, usually drafted by the party having superior bargaining power, is presented to a party, whose choice is either to accept or reject the contract without the opportunity to negotiate its terms. [citation omitted.] Here, the investor is faced with an industry wide practice of including Arbitration Clauses in standardized brokerage contracts. As the investor faces the possibility of being excluded from the securities market unless he accepts a contract with such an agreement to arbitrate, such clauses come within the adhesion doctrine. However, mere inequality in bargaining power does not render a contract unenforcible, [citation omitted] nor are all standardized contracts unenforcible. [citations omitted.] As a consequence of current commercial realities, form forum clauses will control, absent a strong showing it should be set aside. [citation omitted.] For such a contract or clause to be void, it must fall

7

> within judicially imposed limits of enforcement.
> It will not be enforced against the weaker party
> when it is: (1) not within the reasonable expecta-
> tions of said party or (2) within the reasonable
> expectations of the party, but, when considered in
> its context, is unduly oppressive, unconscionable
> or against public policy. [citations omitted.]
>
> Such pre-dispute arbitration agreements are not
> outside the reasonable expectations of the inves-
> tor. [citation omitted.] Nor are they contrary to
> public policy, as indicated by the judicial and
> legislative presumption favoring the arbitration of
> such disputes. [citation omitted.]

Finkle and Ross v. A.G. Becker Paribas, Inc. (D.C.N.Y. 1985),
622 F.Supp. 1505, 1511-12.

There is nothing in the record to indicate that the
arbitration clause in the client agreement form was not
within the parties' reasonable expectations. Nor is there
any evidence that the clause is oppressive or unconscionable.
The federal caselaw demonstrates that arbitration clauses are
common, and may be universal, in brokerage agreements. In
Southland, which like the present case involved allegations
of fraud and misrepresentation, the public policy of enforce-
ment of arbitration clauses was forcefully stated. We con-
clude that even if the customer agreement form is an adhesion
contract, there is nothing in the record and no compelling
law to prevent enforcement of the arbitration clause. We
affirm the District Court's holding that the arbitration
clause is enforceable.

### III

Did the District Court err in directing that arbitration
be conducted under the rules of the American Arbitration
Association as elected by the Passages?

The Murray defendants argue that the Passages' election
of arbitration rules should not be honored, since they did
not consent to arbitration. The Passages' April 16, 1985

election of the American Arbitration Association was made within the 5 days allowed from the date of demand for arbitration, as required in paragraph 14 of the customer agreement form. The selection complied in all respects with the requirements of the contract, but was made contingent upon arbitration being compelled by the court. We conclude that the District Court properly honored the Passages' election of arbitration rules, once it determined that arbitration was proper.

IV

Which parties are entitled to benefit of the arbitration agreement?

The District Court found the Murray defendants were not signatories to the customer agreement forms. It therefore denied the Murray defendants' motion to compel arbitration. An examination of the customer agreements reveals that Prudential was not a signatory either, although its name or the name of its predecessor in interest was printed at the top of each of the forms. The customer agreement form does not clearly indicate the identity of the party or parties with whom the Passages were contracting; it refers to "you", with no explanation of who "you" is. The District Court granted Prudential's motion to compel arbitration.

All of the claims in the Passages' complaint relate to mishandling or unwise management of the Passages' accounts opened at the G. T. Murray office. It is our conclusion that since the claims against Prudential and against the Murray defendants arise out of the same facts and the same actions, to separate the claims as to the defendants would be inappropriate. There is support for this conclusion:

9

> Ross [the investor] argues that her claims should not be arbitrated for several reasons. First, she argues that the claims against Mathis [the broker] should not be arbitrated because he is not a party to the agreement. Although Mathis did not sign the agreement, the causes of action against him may be arbitrated. Every allegation against him arises out of his handling of Ross' account as a Bear Stearns employee. Her damages are predicated on Mathis' alleged breach of a myriad of state and federal duties concerning her account at Bear Stearns. Ross' assertions based upon her trust in Mathis due to their relationship do not change this fact. Any breach of trust dealt with Mathis' actions regarding Ross' accounts with Bear Stearns. Thus, her case against Mathis is based solely on her account, which the arbitration agreement covers.

Ross v. Mathis (N.D.Ga. 1985), 624 F.Supp 110, 113-14. That court held that the claims against broker Mr. Mathis were arbitrable.

We hold that the Passages' claims against all of the defendants are arbitrable.

V

Did the District Court properly stay the claims of the children pending arbitration of their parents' claims?

Both Prudential and the Passages object to the District Court's order staying the claims on the Passage children's accounts pending arbitration of the other claims. Prudential argues that the claims on the Passage children's accounts are subject to arbitration along with the other claims. The Passages argue that the District Court was correct in finding the children's accounts were not included under the terms of the client agreement forms. They contend, however, that it is unjust to stay court action on the children's claims.

Neva Passage opened the accounts in the names of the children and deposited all funds into them. The children are teenagers, and the daughter has attained the age of majority during the course of this action. The amounts deposited in

10

the children's accounts are not large in comparison with the deposits to the other accounts. There is nothing in the record to conclusively establish the nature of these accounts, whether as completed gifts, funds held in trust, or otherwise. The Passages' complaint states that Larry and Neva Passage are 'guardians' of their children but no facts are known as to the technical or legal aspects of the guardian status. We conclude that a factual question remains as to whether Larry and Neva Passage have an interest in the children's accounts, subjecting the accounts to the arbitration agreement.

Issues which go to the formation of the contract as a whole may properly be decided by an arbitrator. Merrill Lynch, Pierce, Fenner, etc. v. Haydu (5th Cir. 1981), 637 F.2d 391, 398. We have here an issue of whether the children's accounts are covered by the customer agreement forms. We reverse the order of the District Court on this issue. The District Court shall enter an order submitting this issue to arbitration.

Affirmed in part and reversed in part.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

11

_____

*John C. Shelby*

*William E. Hunter*
Justices

12

| **Bache Halsey Stuart Shields Incorporated** CLIENT'S AGREEMENT | ACCOUNT NAME (HEREIN REFERRED TO AS I) *Neva M. Passage* | ACCOUNT NO. C 10674-09 | DOC ID. 42 | DATE 2/1/83 |

1. I agree as follows with respect to all of my accounts, in which I have an interest alone or with others, which I have opened or open in the future, with you for the purchase and sale of securities and commodities:

2. I am of full age and represent that I am not an employee of any exchange or of a Member Firm of any Exchange or the NASD, or of a bank, trust company, or insurance company and that I will promptly notify you if I become so employed.

3. All transactions for my account shall be subject to the constitution, rules, regulations, customs and usages, as the same may be constituted from time to time, of the exchange or market (and its clearing house, if any) where executed.

4. Any and all credit balances, securities, commodities or contracts relating thereto, and all other property of whatsoever kind belonging to me or in which I may have an interest held by you or carried for my accounts shall be subject to a general lien for the discharge of my obligations to you (including unmatured and contingent obligations) however arising and without regard to whether or not you have made advances with respect to such property and without notice to me may be carried in your general loans and all securities may be pledged, repledged, hypothecated or re-hypothecated, separately or in common with other securities or any other property, for the sum due to you thereon or for a greater sum and without retaining in your possession and control for delivery a like amount of similar securities or other property. At any time and from time to time you may, in your discretion, without notice to me, apply and/or transfer any securities, commodities, contracts relating thereto, cash or any other property therein, interchangeably between any of my accounts, whether individual or joint or from any of my accounts to any account guaranteed by me. You are specifically authorized to transfer to my cash account on the settlement day following a purchase made in that account, excess funds available in any of my other accounts, including but not limited to any free balances in any margin account or in any non-regulated commodities account, sufficient to make full payment of this cash purchase. I agree that any debit occurring in any of my accounts may be transferred by you at your option to my margin account.

5. I will maintain such margins as you may in your discretion require from time to time and will pay on demand any debit balance owing with respect to any of my accounts. Whenever in your discretion you deem it desirable for your protection, (and without the necessity of a margin call) including but not limited to an instance where a petition in bankruptcy or for the appointment of a receiver is filed by or against me, or an attachment is levied against my account, or in the event of notice of my death or incapacity, or in compliance with the orders of any Exchange, you may, without prior demand, tender, and without any notice of the time or place of sale, all of which are expressly waived, sell any or all securities, or commodities or contracts relating thereto which may be in your possession, or which you may be carrying for me, or buy any securities, or commodities or contracts relating thereto of which my account or accounts may be short, in order to close out in whole or in part any commitment in my behalf or you may place stop orders with respects to such securities or commodities and such sale or purchase may be made at your discretion on any Exchange or other market where such business is then transacted, or at public auction or private sale, with or without advertising and neither any demands, calls, tenders or notices which you may make or give in any one or more instances nor any prior course of conduct or dealings between us shall invalidate the aforesaid waivers on my part. You shall have the right to purchase for your own account any or all of the aforesaid property at any such sale, discharged of any right of redemption, which is hereby waived.

6. All orders for the purchase or sale of commodities for future delivery may be closed out by you as and when authorized or required by the Exchange where made. Against a "long" position in any commodity contract, prior to maturity thereof, and at least five business days before the first notice day of the delivery month, I will give instructions to liquidate, or place you in sufficient funds to take delivery; and in default thereof, or in the event such liquidating instructions cannot be executed under prevailing conditions; you may, without notice or demand, close out the contracts or take delivery and dispose of the commodity upon any terms and by any method which may be feasible. Against a "short" position in any commodity contract, prior to maturity thereof, and at least five business days before the last trading day of the delivery month, I will give you instructions to cover, or furnish you with all necessary delivery documents; and in default thereof, you may without demand or notice, cover the contracts, or if orders to buy in such contracts cannot be executed under prevailing conditions, you may procure the actual commodity and make delivery thereof upon any terms and by any method which may be feasible.

7. All transactions in any of my accounts are to be paid for or required margin deposited no later than 2:00 p.m. on the settlement date.

8. I agree to pay interest and service charges upon my accounts monthly at the prevailing rate as determined by you.

9. I agree that, in giving orders to sell, all "short" sale orders will be designated as "short" and all "long" sale orders will be designated as "long" and that the designation of a sell order as "long" is a representation on my part that I own the security and, if the security is not in your possession that it is not then possible to deliver the security to you forthwith and I will deliver it on or before the settlement date.

10. Reports of the execution of orders and statements of my account shall be conclusive if not objected to in writing within five days and ten days, respectively, after transmittal to me by mail or otherwise.

11. All communications including margin calls may be sent to me at my address given you, or at such other address as I may hereafter give you in writing, and all communications so sent, whether in writing or otherwise, shall be deemed given to me personally, whether actually received or not.

12. No waiver of any provision of this agreement shall be deemed a waiver of any other provision, nor a continuing waiver of the provision or provisions so waived.

13. I understand that no provision of this agreement can be amended or waived except in writing signed by an officer of your Company, and that this agreement shall continue in force until its termination by me is acknowledged in writing by an officer of your Company; or until written notice of termination by you shall have been mailed to me at my address last given you.

14. This contract shall be governed by the laws of the State of New York, and shall inure to the benefit of your successors and assigns, and shall be binding on the undersigned, his heirs, executors, administrators and assigns. Any controversy arising out of or relating to my account, to transactions with or for me or to this Agreement or the breach thereof, and whether executed or to be executed within or outside of the United States, except for any controversy arising out of or relating to transactions in commodities or contracts related thereto executed on or subject to the rules of a contract market designated as such under the Commodity Exchange Act, as amended, shall be settled by arbitration in accordance with the rules then obtaining of either the American Arbitration Association or the Board of Governors of the New York Stock Exchange as I may elect. If I do not make such election by registered mail addressed to you at your main office within five (5) days after demand by you that I make such election, then you may make such election. Notice preliminary to, in conjunction with, or incident to such arbitration proceeding, may be sent to me by mail and personal service is hereby waived. Judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof, without notice to me.

15. If any provision hereof is or at any time should become inconsistent with any present or future law, rule or regulation of any securities or commodities exchange or of any sovereign government or a regulatory body thereof and if any of these bodies have jurisdiction over the subject matter of this agreement, said provision shall be deemed to be superseded or modified to conform to such law, rule or regulation, but in all other respects this agreement shall continue and remain in full force and effect.

DATE 2/1/83      CLIENT'S SIGNATURE X *Neva M. Passage* X

**LENDING AGREEMENT**

YOU AND ANY FIRM SUCCEEDING TO YOUR FIRM ARE HEREBY AUTHORIZED FROM TIME TO TIME TO LEND SEPARATELY OR TOGETHER WITH THE PROPERTY OF OTHERS EITHER TO YOURSELVES OR TO OTHERS ANY PROPERTY WHICH YOU MAY BE CARRYING FOR ME ON MARGIN. THIS AUTHORIZATION SHALL APPLY TO ALL ACCOUNTS CARRIED BY YOU FOR ME AND SHALL REMAIN IN FULL FORCE UNTIL WRITTEN NOTICE OF REVOCATION IS RECEIVED BY YOU AT YOUR PRINCIPAL OFFICE IN NEW YORK.

DATE 2/1/83      CLIENT'S SIGNATURE X *Neva M. Passage* X

SIGN IN BOTH PLACES

KINDLY SIGN THIS FORM IN THE TWO SIGNATURE SPACES INDICATED ABOVE. IN THE CASE OF JOINT ACCOUNTS, BOTH TENANT BOTH SIGNATURE SPACES. RETURN THIS ORIGINAL (WHITE) TO THE BACHE OFFICE WHICH SERVICES YOUR ACCOUNT. THE DUPLICAT RETAINED FOR YOUR PERSONAL RECORDS.

FORM 124104

**EXHIBIT**

**B**

Mr. Justice Frank B. Morrison, Jr., dissenting:

I dissent.

The majority opinion concludes that it is not necessary to decide whether the contract is one of adhesion since there is "no compelling law and nothing in the record to prevent the clause from being enforced." I am at a loss to understand what is being said.

First, it is necessary to decide whether the provision is one of adhesion. Under the authority cited in the majority opinion, the language is clearly one of adhesion since the investor does face the possibility of being excluded from the securities market unless he or she accepts a contract with such an agreement to arbitrate.

Since this provision is one of adhesion the authorities universally require that it not be enforced unless there is a showing that: (1) the provision is within the reasonable expectations of the parties and (2) is not unduly oppressive, unconscionable or against public policy. Finkle and Ross v. A.G. Becker Paribas, Inc. (D.C.N.Y. 1985), 622 F.Supp. 1505, 1511-12, cited in the majority opinion.

There has been no factual determination by the trial court respecting the reasonable expectations of the parties to this agreement. The adhesion provision provided:

> Any controversy arising out of or relating to my account, to transactions with or for me or to this agreement or the breach thereof . . . shall be settled by arbitration in accordance with the rules then obtaining of either the American Arbitration Association or the Board of Governors of the New York Stock Exchange as I may elect . . .

First, the adhesion provision is not specifically directed to anyone in particular. We do not know whether Passages' intended for the arbitration agreement to apply to Prudential-Bache, or G.T. Murray, or both. The District

14

Court found that the agreement applied to Prudential-Bache but not to G.T. Murray. The majority finds that the District Court erred in that it would be inappropriate to separate the claims as to the defendants. This action is taken by the majority with no reference to whether application of arbitration to the Murray defendants was within "the reasonable expectations" of the parties. This is a factual determination that was not clearly addressed by the District Court but, if it was addressed, the District Court must have found that Passages did not expect the agreement to apply to Murrays. There is no factual basis for this appellate court to find that the record shows, as a matter of law, that the parties intended the arbitration clause to run to Murrays who are not mentioned in the agreement.

Secondly, there are no facts in the record respecting whether Passages intended the arbitration provision to apply to tort actions. Domke on Commercial Arbitration (Rev.Ed.) states at § 13:08 that:

> Liability for tort will usually not be an arbitrable issue since parties will hardly have contemplated such occurrence when they made an agreement containing an arbitration clause. Since events of a tortious character are usually not foreseen, such events will not be specifically included in the arbitration agreement so as to later come [sic] arbitrable issues.

Again, we have no factual determination by the trial court about whether it was within the reasonable expectation of the parties that tort claims would be submitted to arbitration. As indicated by Domke such claims are usually not embraced within arbitration agreements and there would have to be evidence to the contrary showing that the parties did in fact intend to include tort claims within the arbitration provision.

15

The most amazing aspect of the majority opinion is the position that the issue of whether childrens' accounts are included within the arbitration provision is a fact to be determined by arbitration. What a quantum leap in logic!

The children have a right to court access for resolution of their claims unless they have validly relinquished that right through executing an arbitration provision. Whether such contractual consent existed is a factual determination for the District Court. The District Court apparently held the children had not relinquished their rights for court access. The majority begins by denying court access in allowing an arbitrator to decide a factual question that necessarily requires court resolution first. How could the childrens' rights be decided by an arbitrator unless they first validly relinquished their right to a judicial determination?

The case should be remanded for factual findings as indicated.

Justice

16